The CURATORS OF the UNIVERSITY OF MISSOURI, a Public Corporation of the State of Missouri, and the Board of Curators of the University of Missouri, Plaintiffs-Appellants,

v.

PUBLIC SERVICE EMPLOYEES LOCAL NO. 45, COLUMBIA, Missouri, et al., Defendants-Respondents.

No. 58646.

Supreme Court of Missouri, En Banc.

March 10, 1975.

Jackson A. Wright, Marvin E. Wright, James S. Newberry, Richard S. Paden, Columbia, for plaintiffs-appellants.

Scott O. Wright, Brown, Wright, Willbrand & Simon, Columbia, for defendants-respondents.

DONNELLY, Chief Justice.

This case involves a controversy between the Curators of the University of Missouri and certain nonacademic employees of the University.

On October 27, 1972, plaintiffs became aware that approximately 500 employees of the University were not reporting for work. Two pickets appeared at the south entrance of Jesse Hall at approximately 7:45 A.M. that date. Pickets also appeared at the University power plant the same day. Picketing became more intense on November 6, 1972, when mass picketing occurred at the entrance to Central Food Service and vehicular traffic was physically blocked from entering certain areas of the University. The only deliveries actually made were by means of police escort. The mass picketing continued on November 7, 1972, and no deliveries were made on campus that day. The general effect of the strike was disruption of normal University activity. Employment returned to normal on November 16, 1972.

On November 6, 1972, plaintiffs filed their petition in the Circuit Court of Boone County, Missouri, and requested a restraining order and temporary injunction and, after hearing, a permanent injunction. A restraining order was issued on November 6, 1972. A temporary injunction was issued on November 15, 1972. Defendants filed their answer and counterclaim on November 20, 1972. Hearings were held, and evidence adduced, on December 5, 1972, January 29, 1973, and January 30, 1973.

The trial court, after hearing, sustained plaintiffs' request for a permanent injunction against striking, and declared, in behalf of defendants, "that the provisions of Section 105.500–105.525 V.A.M.S. are applicable to the Board of Curators." Plaintiffs appealed.

Plaintiffs assert on appeal that "the trial court erred in finding that those provisions of Sections 105.500–105.525 RSMo 1969 which purport to extend to public employees of the University of Missouri rights greater than those recognized by the Constitution of Missouri, 1945 and the common law are not an unconstitutional infringement upon the 'government' of the University of Missouri by the Board of Curators pursuant to Article IX, Section 9(a), Constitution of Missouri, 1945."

Article IX, Section 9(a), of the Constitution of Missouri, V.A.M.S., reads as follows:

"The government of the state university shall be vested in a board of curators consisting of nine members appointed by the governor, by and with the advice and consent of the senate."

Sections 105.500–105.530, RSMo 1969, V.A.M.S., have been accurately referred to as the "Missouri Public Sector Labor Law." (Loevi, The Development and Current Application of Missouri Public Sector Labor Law, 36 Mo.L.R. 167). Sections 105.510, 105.520, and 105.525 are pertinent here.

■ Section 105.510, RSMo 1969, V.A.M.S., reads as follows:

"Employees, except police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard, all teachers of all Missouri schools, colleges and universities, of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing. No such employee shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or coercion, compel or attempt to compel any such employee to join or refrain from joining a labor organization, except that the above excepted employees have the right to form benevolent, social, or fraternal associations. Membership in such associations may not be restricted on the basis of race, creed, color, religion or ancestry."

Section 105.520, RSMo 1969, V.A.M.S., reads as follows:

"Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative or representatives shall meet, confer and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection."

Section 105.525, RSMo 1969, V.A.M.S., reads as follows:

"Issues with respect to appropriateness of bargaining units and majority representative status shall be resolved by the state board of mediation. In the event that the appropriate administrative body or any of the bargaining units shall be aggrieved by the decision of the state board of mediation, an appeal may be had to the circuit court of the county where the administrative body is located or in the circuit court of Cole county. The state board of mediation shall use the services of the state hearing officer in all contested cases."

The essential question, when applied to the situation presented here, is whether the Public Sector Labor Law represents, directly or indirectly, an impermissible investing of power to govern the State University in persons or agencies other than the board of curators of the State University. In our opinion, when interpreted and applied against the background of Missouri constitutional provisions, it does not. Cf. City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539 (1947); State ex rel. Missey v. City of Cabool, 441 S.W.2d

35 (Mo.1969); City of Kirkwood v. Missouri State Board of Mediation, 478 S.W. 2d 690 (Mo.App.1972); and State ex rel. O'Leary v. Missouri State Board of Mediation, 509 S.W.2d 84 (Mo. banc 1974).

Article I, Section 9, of the Constitution of Missouri, provides:

"That the people have the right peaceably to assemble for their common good, and to apply to those invested with the powers of government for redress of grievances by petition or remonstrance."

In City of Springfield v. Clouse, supra, 206 S.W.2d 1. c. 542, in an opinion written in 1947, prior to the first enactment of the Public Sector Labor Law in 1965, this Court en Banc, against the background of the United States and Missouri Constitutions, addressed the need for bringing the problems of public employees to the attention of public officers and legislative bodies, and said:

"All citizens have the right, preserved by the First Amendment to the United States Constitution and Sections 8 and 9 of Article I of the 1945 Missouri Constitution, Sections 14 and 29, Art. 2, Constitution of 1875, to peaceably assemble and organize for any proper purpose, to speak freely and to present their views and desires to any public officer or legislative body. * * * Organization by citizens is a method of the democratic way of life and most helpful to the proper functioning of our representative form of government. It should be safeguarded and encouraged as a means for citizens to discuss their problems together and to bring them to the attention of public officers and legislative bodies. Organizations are likewise helpful to bring public officers and employees together to survey their work and suggest improvements in the public service as well as in their own working conditions. * * * Nevertheless, the organization and activity in organizations of public officers and employees is subject to some regulation for the public welfare. See United Public

Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754; Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794; King v. Priest, 357 Mo. 68, 206 S.W.2d 547, and cases therein cited. This is because a public officer or employee, as a condition of the terms of his public service, voluntarily gives up such part of his rights as may be essential to the public welfare * * *."

This Court has since held in *Missey,* supra, and reaffirmed in *O'Leary,* supra, that the Public Sector Labor Law represents a statutory vehicle by which public employees may assert the rights given them by the First Amendment to the United States Constitution and Section 9 of Article I of the Missouri Constitution to peaceably assemble and to petition for a redress of grievances. In *Missey,* 441 S.W.2d 35, at 41, this Court stated:

"Sections 105.500 et seq., supra, do not purport to give to public employees the right of collective bargaining guaranteed by Section 29, Article I, of the 1945 Constitution to employees in private industry and in the sense that term is usually known with its attendant connotation of unfair labor practice for refusal by the employer to execute and adopt the agreement produced by bargaining, Brotherhood of Painters, etc., Local 1385, 143 NLRB 678, 680, and the use of strike as a bargaining device constitutionally protected to private employees, Div. 1287 Amalgamated Assn. of St. Elec. Ry. and Motor Coach Emp. of America v. State of Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763, but expressly denied by Section 105.530, supra, to public employees. The act does not constitute a delegation or bargaining away to the union of the legislative power of the public body, and therefore does no violence to City of Springfield v. Clouse, supra, 206 S.W.2d 1. c. 543 [4], 545–6 [8, 9], because the prior discretion in the legislative body to adopt, modify or reject outright the results of the discussions is untouched. The public employer is not required to agree but is required only to 'meet, confer and discuss,' a duty already enjoined upon such employer prior to the enactment of this legislation. City of Springfield v. Clouse, supra, 1. c. 542–3 [1–3]. * * *."

■ Plaintiffs challenge the jurisdiction of the State Board of Mediation to determine as to its employees the appropriateness of bargaining units and majority representative status. In our opinion, the utilization of the State Board of Mediation in the manner and for the purposes stated in Section 105.525, supra, is not an encroachment on the right to govern the State University. In any event, plaintiffs do not question defendants' majority representative status in this case.

The question then becomes: what are the respective rights and responsibilities of the parties under the Missouri Public Sector Labor Law? The Law gives public employees the vehicle for petitioning their employer through a designated representative. When this representative submits proposals and grievances relative to salaries and other conditions of employment, the public body or its designated representative must acknowledge such proposals and grievances and must discuss them with the bargaining representative. Generally, the public body will designate a representative to meet with the representative of the employees. In this event, the public body's representative acts essentially as a hearer and a receptor of the employees' petitions and remonstrances. His duty is to discuss them with the bargaining representative, and to fully apprise himself of the nature and extent of the proposals and grievances presented. The representative of the public body must then transmit to it, in written form, the proposals and grievances and the substance of the discussions. The public body must then give them its consideration "in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection."

We believe the requirements of the Public Sector Labor Law, as delineated above, merely provide a procedural vehicle for assertion by defendants of their constitutional rights to peaceably assemble and to petition for redress of grievances. In these circumstances, we hold that they do not encroach upon the power of the board of curators to govern the State University.

We recognize that labor relations between governmental agencies and their employees are becoming a problem of considerable magnitude. The considerations attending a resolution of the problem have been articulated by the Legislature of the State of Kansas (K.S.A.1974 Supp. 75–4321), as follows:

"(a) The legislature hereby finds and declares that:

"(1) The people of this state have a fundamental interest in the development of harmonious and cooperative relationships between government and its employees;

"(2) the denial by some public employers of the right of public employees to organize and the refusal by some to accept the principle and procedure of full communication between public employers and public employee organizations can lead to various forms of strife and unrest;

"(3) the state has a basic obligation to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government;

"(4) there neither is, nor can be, an analogy of statuses between public employees and private employees, in fact or law, because of inherent differences in the employment relationship arising out of the unique fact that the public employer was established by and is run for the benefit of all the people and its authority derives not from contract nor the profit motive inherent in the principle of free private enterprise, but from the constitution, statutes, civil service rules, regulations and resolutions; and

"(5) the difference between public and private employment is further reflected in the constraints that bar any abdication or bargaining away by public employers of their continuing legislative discretion and in the fact that constitutional provisions as to contract, property, and due process do not apply to the public employer and employee relationship."

The General Assembly of Missouri may see fit in the future to amend the Public Sector Labor Law and to extend its requirements beyond the boundaries set in *Clouse,* supra. If so, and an attack on the constitutional aspects of the *Clouse* holding is made, we will consider the questions at that time. We need not, and should not, attempt to resolve them now.

The judgment is affirmed.

SEILER, MORGAN and BARDGETT, JJ., concur.

HOLMAN, HENLEY and FINCH, JJ., dissent.