Larry SUMPTER, Terry Riles, Mike Congdon, John Stufflebean, Eugene Sims, Earl Lawson, Douglas Henry, Andrew Morrison, Robert Akers, Robert Dutton, Ronald Combs and Raymond Hill, Plaintiffs-Appellants,

v.

CITY OF MOBERLY, Missouri, Defendant-Respondent.

No. 64014.

Supreme Court of Missouri, En Banc.

Dec. 16, 1982.

On Rehearing Feb. 23, 1983.

Rehearing Denied Feb. 23, 1983.

N.E. Brown, Elizabeth A. Keller, Huntsville, for plaintiffs-appellants.

Michael E. Kaemmerer, St. Louis, Marion E. Lamb, Moberly, for defendant-respondent.

John H. Goffstein, Clayton, Rhonda C. Thomas, Columbia, Darold E. Crotzer, Jr., Clayton, Robert J. Connerton, Theodore T. Green, Washington, D.C., Howard C. Wright, Springfield, Charles A. Werner, St. Louis, Louis J. Leonatti, Mexico, John Ashcroft, Atty. Gen., Carl S. Yendes, Asst. Atty. Gen., Jefferson City, amicus curiae.

JAMES A. FINCH, Jr., Senior Judge.

Plaintiffs, members of the Professional Firefighters Association of Moberly, Missouri, Local 2671, filed suit seeking injunctive relief to prevent defendant City of Moberly from violating certain provisions of what plaintiffs claim is a binding collective bargaining agreement. The City filed a motion to dismiss the petition on the ground that it failed to state a claim on which relief could be granted in that the

document relied upon was not an enforceable contract binding upon the City. The court sustained the motion and dismissed the petition. Plaintiffs appealed to the Missouri Court of Appeals, Western District, which reversed and remanded for trial. On application the case was ordered transferred to this Court and is decided by us as though here on direct appeal. We utilize portions of the Court of Appeals opinion without the use of quotation marks. We affirm.

Acting pursuant to the provisions of §§ 105.500–105.530 RSMo 1978,[1] sometimes popularly referred to as the Public Sector Labor Law, firefighters employed by the city formed and joined the Professional Firefighters Association of Moberly, Missouri, Local 2671, a labor organization which was certified by the State Mediation Board as the exclusive representative for the firefighters. That organization, as authorized by § 105.510,[2] presented proposals relative to salaries and other conditions of employment to the City of Moberly.

Thereafter, pursuant to § 105.520[3] the results of discussions with the City concerning the union's proposals were incorporated in a written Memorandum of Understanding which was presented to the City Council. It covered wages, overtime pay, call back pay, sick leave, holidays and other allowances, duty tours, training, and many other subjects beginning July 1, 1980, with a provision for automatic renewal every two years in the absence of notice of intention to modify. In May, 1980 the City Council enacted an ordinance adopting the

provisions of the Memorandum of Understanding "as the terms and working conditions for Local 2671" for the term of that document.

On January 28, 1981, the City Manager of Moberly sent a memorandum to all fire department personnel that effective February 1, 1981, the work schedule for the department would be 24 hours on duty, followed by 48 hours off duty. This represented a change from the schedule in the Memorandum of Agreement which called for 24 hours on duty every other day for 12 days, followed by 7 days off duty. The Manager's Memorandum stated that one additional firefighter would be hired and that the change in schedule was "necessary to provide adequate on-duty personnel to mann (sic) the fire stations, to accommodate 911 emergency calls and to effectuate a logical training schedule." It went on to advise that by reason of "inability of the Training Committee to agree on a Training Program" a program therein outlined would be instituted in lieu of the in-service training program set out in the Memorandum of Understanding. The City Manager's notice recited that it had been approved by the Mayor and City Council.

Plaintiffs allege that the notice from the City Manager constitutes a unilateral change in duty tours and training schedules from those specified in the agreement negotiated between the City and Local 2671, and that such unilateral acts violate the terms of said agreement. They seek to have the City enjoined from making such changes or

---

1. All statutory references, unless otherwise indicated, are to RSMo 1978.

2. The portion of § 105.510 pertinent to this case is as follows:
    "Employees, except police, deputy sheriffs, Missouri state highway patrol, Missouri national guard, all teachers of all Missouri schools, colleges and universities, of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through representatives of their own choosing . . ."

3. Section 105.520 provides:

"Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative or representatives shall meet, confer and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection."

any other unilateral changes from the terms of the agreement as embodied in the Memorandum of Understanding.

The question thus presented on this appeal is whether a memorandum of the results of discussions pursuant to § 105.520, after approval or adoption of those results by the City Council, constitutes a binding collective bargaining agreement which is enforceable on the City of Moberly.

The question of whether a Missouri city may enter into a binding collective bargaining agreement with its employees was addressed at length in *Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539 (1947). That case involved an appeal in a declaratory judgment action wherein the City of Springfield sought a determination of its power to make collective bargaining contracts covering wages, hours, and working conditions with labor unions representing its employees. This Court held that it could not make such contracts, concluding that under the separation of powers doctrine as enunciated in the Missouri Constitution, the whole matter of qualifications, compensation, tenure and working conditions of employees are matters for legislative determination which, absent constitutional authorization, cannot be delegated or contracted away.

In the course of that decision the Court recognized that all citizens have the right under both federal and state constitutions to peaceably assemble, to speak freely, and to present their views to any public officer or legislative body. It held that employees have such rights in connection with establishment of their pay and working conditions. However, said the court, such rights are not to be confused with or equated to collective bargaining as that term is usually understood in the private sector.

In so ruling, the court considered the provisions of Article I, § 29 of the Missouri Constitution, which provides "that employees shall have the right to organize and to bargain collectively through representatives of their own choosing." The Court, for reasons detailed in it's opinion, concluded that this provision applies only to the private sector and is not applicable to public employees.

Subsequently, in *Glidewell v. Hughey*, 314 S.W.2d 749 (Mo. banc 1958), this Court again discussed whether public employees have a right to collective bargaining. In that case a declaratory judgment was sought as to whether, after Springfield adopted a city charter, unions could enter into collective bargaining agreements with Springfield's board of public utilities respecting wages, hours and working conditions of employees of the city's public utilities. The Court observed that under Springfield's charter there was no provision for separation of corporate activity involving utilities from work concerning other governmental functions. Hence, such matters could not become the subject of bargaining and contract between the board of public utilities and its employees. The Court said, l.c. 736:

"... As we held in the *Clouse* case, § 29 Art. I, Constitution, does not confer any collective bargaining rights upon public officers or employees in their relations with municipal government and we hold that it is not applicable to the situation in this case because there is no such separation of the public utilities of the city from its general governmental functions and legislative powers as would be required to make it applicable. Therefore, our conclusion is that under the present charter of the city the whole matter of qualifications, tenure, compensation and working conditions in the city's public utilities involves the exercise of legislative powers and cannot become a matter of bargaining and contract."

Thereafter, the present Public Sector Labor Law was enacted. Its constitutionality and its effect were considered in *State ex rel. Missey v. City of Cabool*, 441 S.W.2d 35 (Mo.1969). In ruling that the act is constitutional, the Court said, l.c. 41:

"The general assembly is presumed to be aware of existing declarations of law by the supreme court when it enacts law on the same subject, *Mack Motor Truck Corp. v. Wolfe*, Mo.App., 303 S.W.2d 697,

701[5]; *Jacoby v. Missouri Valley Drainage Dist.,* 349 Mo. 818, 163 S.W.2d 930, 938[8]; and, *without indication to the contrary the general assembly must have had the intent to enact this legislation in accord with constitutional principles previously enunciated in City of Springfield v. Clouse, supra, and reiterated in Glidewell v. Hughey, Mo., 314 S.W.2d 749. For these reasons, it is constitutional."* (Emphasis added).

The Court analyzed the act and explained its ruling in these words, l.c. 41:

" . . . *The act does not constitute a delegation or bargaining away to the union of the legislative power of the public body,* and therefore does no violence to *City of Springfield v. Clouse,* supra, 206 S.W.2d l.c. 543[4], 545–6[8, 9], *because the prior discretion in the legislative body to adopt, modify or reject outright the results of the discussions is untouched.* The public employer is not required to agree but is required only to 'meet, confer and discuss', a duty already enjoined upon such employer prior to the enactment of this legislation. *City of Springfield v. Clouse,* supra, l.c. 542–3[1–3]. *The act provides only a procedure for communication between the organization selected by public employees and their employer without requiring adoption of any agreement reached . . .* " (Emphasis added).

The Public Sector Labor Law was interpreted again in *Curators of the University of Missouri v. Public Service Employees Local No. 45,* 520 S.W.2d 54 (Mo. banc 1975). In that case the Curators, contending that said act was inapplicable to them, sought an injunction against defendant union and its striking members. The trial court enjoined the defendants from striking but held that the Public Sector Labor Law applies to the Board of Curators. The Board of Curators appealed from the latter ruling but this Court affirmed, holding that when said act is interpreted and applied against the background of Missouri constitutional provisions it does not represent an impermissible encroachment on the constitutional powers of the Curators to govern the state university

pursuant to Mo. Const., art. IX, § 9(a). It cited and discussed *Clouse* and *Missey* and then went on to say, l.c. 57–58:

"The question then becomes: what are the respective rights and responsibilities of the parties under the Missouri Public Sector Labor Law? The Law gives public employees the vehicle for petitioning their employer through a designated representative. When this representative submits proposals and grievances relative to salaries and other conditions of employment, the public body or its designated representative must acknowledge such proposals and grievances and must discuss them with the bargaining representative. Generally, the public body will designate a representative to meet with the representative of the employees. In this event, the public body's representative acts essentially as a hearer and a receptor of the employees' petitions and remonstrances. His duty is to discuss them with the bargaining representative, and to fully apprise himself of the nature and extent of the proposals and grievances presented. The representative of the public body must then transmit to it, in written form, the proposals and grievances and the substance of the discussions. The public body must then give them its consideration 'in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection.

"*We believe the requirements of the Public Sector Labor Law, as delineated above, merely provide a procedural vehicle for assertion by defendants of their constitutional rights to peaceably assemble and to petition for redress of grievances.* In these circumstances, we hold that they do not encroach upon the power of the board of curators to govern the State University." (Emphasis added).

Plaintiffs, and amicus curiae which have filed briefs in support of plaintiffs' position, contend that the last sentence of § 105.520, while authorizing the public body to reject or modify a bargaining representative's proposal, also authorizes a binding agreement between the public body and its em-

ployees when it authorizes adoption of the proposal by "ordinance, resolution, bill or other form required for adoption ..." Therefore, they say, when the Moberly City Council, a legislative body, decided to and did adopt by ordinance the proposals submitted, it thereby entered into a binding and enforceable collective bargaining agreement.

These contentions misinterpret § 105.520. In the first place the statutory authorization to reject, modify and adopt the representative's proposal is not limited to action by a legislative body. It also authorizes action by an "administrative ... or other governing body." Clearly, the decision in *Clouse* says that an administrative body cannot decide to and then enter into a collective bargaining agreement. Such action would violate applicable constitutional restrictions regarding separation of powers. It seems clear, therefore, that the General Assembly was saying in § 105.520 only that when a proposal is submitted to a public body (whether it be an administrative, legislative or other governing body), it has a duty to consider and act on such proposal. It may reject, modify or adopt. If it decides to adopt the proposal, it does so by ordinance, resolution or other appropriate form, depending on the nature of the public body. The result will be an administrative rule, an ordinance, a resolution, or something else which governs wages and working conditions, but it will not be a binding collective bargaining contract.[4] We cannot conclude that the legislature, by the provisions of § 105.520, intended to authorize and provide for a contract if the public body is a legislative body, but something less if it is an administrative board or other governing body. If the legislature had intended by the last sentence of § 105.520 to provide for and authorize a binding contract under some but not all circumstances mentioned in the statute, it would have so stated. Secondly, § 105.520 says nothing whatsoev-

er about a public body entering into or executing a contract if it decides to adopt the representative's proposal. Therefore, we hold that § 105.520 did not authorize the Moberly City Council to enter into a collective bargaining contract.

The above conclusions are in harmony with what this Court said in *Missey* and *Curators* in construing the Public Sector Labor Law. Both found that act to be a "meet, confer and discuss" law which merely provided a specific procedure whereby public employees could implement their constitutional rights to meet, talk and petition and which also assured that the public body would consider and take action of some kind (reject, modify or adopt) on the proposals. Both cases held that the statute was consistent with what the Court has held in *Clouse* and hence was constitutional. That the Court concluded that the act went no further is shown by this language in *Curators, 520 S.W.2d, 1.c. 58:*

> "The general assembly of Missouri may see fit in the future to amend the Public Sector Labor Law and to extend its requirements beyond the boundaries set in *Clouse*, supra. If so, and an attack on the constitutional aspects of the *Clouse* holding is made, we will consider the questions at that time. We need not and should not, attempt to resolve them now."

This clearly indicates that the Court did not consider that the Public Sector Labor Law as then drafted provided for or authorized binding collective bargaining agreements for public employees. That would have been beyond the boundaries expressed in *Clouse* and would have called for the Court to then consider that which it postponed until such time as the statute might be amended to go beyond the boundaries of *Clouse.*

There has been no change in the Public Sector Labor Law since *Missey* and *Cura-*

---

4. Judge Seiler's dissent suggests that by this language the Court in holding that the ordinance adopted by the City Council has no binding effect. That is not what we hold. The ordinance, just as any city ordinance, governs and is binding until changed by appropriate action. We hold only that this ordinance did not result in a collective bargaining contract which could be changed only with union approval.

*tors* and no change in the constitutional provisions considered in *Clouse.* Hence, the trial court was correct in sustaining the city's motion to dismiss.

Judgment affirmed.

DONNELLY, C.J., and RENDLEN, WELLIVER, HIGGINS and GUNN, JJ., concur.

ROBERT E. SEILER, Senior Judge, dissents in separate dissenting opinion filed.

BILLINGS, J., not sitting.

ROBERT E. SEILER, Senior Judge, dissenting.

The principal opinion concludes that when a proposal is submitted pursuant to § 105.520, the public body (here a municipality) has a duty to consider and act on such proposal—to reject, modify or adopt. These are the choices. The principal opinion states the results "will be . . . an ordinance . . . or something else which governs wages and working conditions . . ." How a proposal can be adopted by ordinance which "governs" wages and working conditions and yet has no binding effect is a new and puzzling concept in the law of contracts. All the negotiations which preceded the proposal, the proposal itself, and its adoption all become an exercise in futility. I do not believe the legislature intended such a meaningless outcome of the written instrument which § 105.520 permits to be presented to the governing body for adoption, once it has been adopted, as was done in this case.

I, therefore, respectfully dissent and agree with the court of appeals, western district, that the agreement is binding and enforceable and adopt portions of the western district opinion by Turnage, J., which, without use of quotation marks, states as follows:

The City maintains that under *City of Springfield v. Clouse,* 356 Mo. 1239, 206 S.W.2d 539 (1947) the City retains the legislative discretion to fix the hours and other conditions of employment of its employees and it may not enter into any contract which in any way infringes upon the total freedom which the City has to set the terms of employment of its employees. The City further argues that the court in *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35, 41[6, 7] (Mo.1969), stated that §§ 105.500 to 105.530 are in accord with the constitutional principles previously enumerated in *Clouse.* The City draws the conclusion that the court in *Missey* held that a city cannot enter into a binding agreement under § 105.520.

The City's arguments are not persuasive. The statement in *Missey* which the City relies upon was referring to the constitutional rights enjoyed by public employees to peaceably organize and assemble for any proper purpose, to speak freely, and to present their views and desires to any public officer or legislative body. The court did not hold in *Missey* that an agreement made under § 105.520 could not be enforced against the City. On the contrary, the court in *Missey,* at page 41[6, 7] held §§ 105.500 to 105.530 to be constitutional. The court also answered the argument the City now makes that *Clouse* prevents the agreement from being binding on the City when it stated at page 41[2–5]:

"The act does not constitute a delegation or bargaining away to the union of the legislative power of the public body, and therefore does no violence to *City of Springfield v. Clouse,* supra, 206 S.W.2d l.c. 543[4], 545–6[8, 9], because the prior discretion in the legislative body to adopt, modify or reject outright the results of the discussions is untouched. The public employer is not required to agree but is required only to 'meet, confer and discuss,' a duty already enjoined upon such employer prior to the enactment of this legislation. *City of Springfield v. Clouse,* supra, l.c. 542–3[1–3]. The act provides only a procedure for communication between the organization selected by public employees and their employer without requiring adoption of any agreement reached."

The court reiterated its holding in *Missey* in *State ex rel. O'Leary v. Missouri State*

*Bd. of Mediation,* 509 S.W.2d 84 (Mo. banc 1974), when it quoted from *Missey* on pages 87 and 88. The court also stated at page 87 that §§ 105.500 to 105.530 had been found to be constitutional in *Missey.*

The only case which has been cited or located directly addressing the question raised in this matter is *Glendale City Employees Association, Inc. v. City of Glendale,* 15 Cal.3d 328, 540 P.2d 609, 124 Cal.Rptr. 513 (banc 1975). In *Glendale* the court stated at 540 P.2d 613, 124 Cal.Rptr. 517[1] that the applicable California statute provided "that after negotiations 'If agreement is reached by the representatives of the public agency and a recognized employee organization . . . they shall jointly prepare a written memorandum of such understanding, which shall not be binding, and present it to the governing body or its statutory representative for determination.' "

In holding that an agreement once approved by the public body becomes binding upon it, the court stated at 540 P.2d 614, 124 Cal.Rptr. 518:

"Why negotiate an agreement if either party can disregard its provisions? What point would there be in reducing it to writing, if the terms of the contract were of no legal consequence? Why submit the agreement to the governing body for determination, if its approval were without significance? What integrity would be left in government if government itself could attack the integrity of its own agreement? The procedure established by the act would be meaningless if the end-product, a labor-management agreement ratified by the governing body of the agency, were a document that was itself meaningless."

This court agrees and adopts the reasoning of the court in *Glendale.* While the language used in the California statute is slightly different in that it states the agreement shall be submitted to the governing body for determination, the statute involved here has the same meaning when it provides that the results of the discussion with the employees shall be presented to the governing body for adoption, modifica-

tion or rejection. Thus, the meaning is the same, i.e., the agreement is to be presented to the governing body for its determination of whether or not it shall adopt, modify or reject the results of the discussions.

As cogently stated by the court in *Glendale,* there would be no point in providing for the results of the discussions between the public body and its employees to be submitted to the governing body if either party could disregard the provisions after they had been approved by both groups. Nor would there be any point in reducing the matters agreed upon to writing if there were to be no binding agreement. In fact, if the agreement is not to be binding upon either party, then the legislature has largely performed a useless act in passing §§ 105.500 to 105.530. Certainly, the submission of the results of the discussions to the governing body for its adoption, as provided in § 105.520, would be completely meaningless if it were held that after adoption the agreement thus made could be disregarded. The legislature clearly intended, as stated in both *Missey* and *O'Leary,* to reserve to the City the right to reject or modify the results of any discussions held with its city employees. By reserving this right to the City, the legislature protected the rights of the City as spelled out in *Clouse.* It is just as clear that the legislature, when it provided that the results of the discussions could be approved by the City, intended that the items thus approved by the City would become binding upon it, otherwise, as already stated, and as stated in *Glendale,* the provision that these results could be approved by the City would be completely meaningless.

This court holds that when the results of discussions which are held between the City and its employees have been submitted to a city council, the council is free to adopt, modify or reject the same. However, if the City elects to adopt the results of discussions which have been reduced to writing, governing salaries and other conditions of employment as authorized by § 105.510, then the agreement between the City and its employees becomes binding upon both

parties. The agreement being binding, it then follows that such agreement may be enforced.

The petition in this case alleged an agreement between the City of Moberly and its firefighters which can be enforced. For that reason, the court erred when it dismissed the petition for failure to establish an enforceable contract binding upon the City.

In addition to what Judge Turnage stated above and the authorities cited by him, *Peters v. Board of Education of Reorg. Sch. Dist. No. 5,* 506 S.W.2d 429 (Mo.1974), supports the plaintiffs. In *Peters* the court upheld the validity of a written agreement between a teachers association and a school board which set up method for negotiating "revision of new policies" or "development of new policies". It provided for meetings of a joint negotiation committee composed of board representatives and association representatives and for appointment of a three member factfinding committee to attempt to resolve differences. The agreement provided that any tentative agreements would be submitted for ratification and if approved by both parties should become district policy. Plaintiffs, claiming to represent the association as a class, sought declaratory judgment that the written agreement was valid. The trial court dismissed the petition, but this court reversed and remanded. The effect of the decision is that once the parties reach an agreement it is binding.

I agree with the court of appeals that the judgment should be reversed and the cause remanded for further proceedings.

## ON MOTION FOR REHEARING

### PER CURIAM.

In their motion for rehearing or for clarification, plaintiffs and certain amicus curiae suggest that the court's opinion holds that an official in the executive branch of government can nullify a valid legislative enactment.

Plaintiffs misinterpret our opinion which clearly states that the ordinance enacted by the City Council of Moberly was a valid ordinance which was binding until changed by appropriate action by the City. The opinion goes on to recite that the City asserted that the mayor and city council had approved those changes which the city manager notified the firefighters would be made. This assertion by the City was not denied or contested in any way by plaintiffs. At no point in the record or in the briefs did plaintiffs contend that we were dealing with an attempt by someone in the executive branch to negate a valid legislative enactment and that what occurred was ineffective for that reason. At no time did plaintiffs assert that the city council (with the Mayor's approval) had not acted on and approved the change in the duty schedule and the training program. Therefore, the court's decision was based on the premise that there was appropriate legislative approval of the changes of which the firefighters were notified. The opinion does not hold otherwise.

In other respects, plaintiff's motion is reargument of matters previously asserted.

The motion for rehearing is overruled.

DONNELLY, Judge, dissenting.

In their motion for rehearing, appellants suggest that "the Court, in holding that a municipality may not enter into a binding enforceable collective bargaining agreement, misstates the issue." I agree.

In my view, the opportunity presented on this appeal is one of accommodating, as much as possible, two concepts: (1) that there be full and meaningful communication between public employers and public employees so as to minimize strife and unrest and to maximize orderliness in the operation of Missouri government; and (2) that there can never be an analogy between public employees and private employees because of differences in the employment relationship arising out of the fact that the authority of a public body derives *only from the consent of the people.*

In practical effect, members of a city council are but trustees of the public—they

could not, if they would, pass an irrevocable ordinance when acting in the exercise of legislative discretion. No city council "could bind itself or its successor to make or continue any legislative act." *City of Springfield v. Clouse,* 206 S.W.2d 539, 545 (Mo. banc 1947). On the other hand, legislative acts of a council remain viable unless and until amended or repealed by the council; they cannot be rendered ineffectual by an administrative official.

In *Curators of the University of Missouri v. Public Service Employees Local No. 45,* 520 S.W.2d 54, 57 (Mo. banc 1975), this Court observed:

> The question then becomes: what are the respective rights and responsibilities of the parties under the Missouri Public Sector Labor Law? The Law gives public employees the vehicle for petitioning their employer through a designated representative. When this representative submits proposals and grievances relative to salaries and other conditions of employment, the public body or its designated representative must acknowledge such proposals and grievances and must discuss them with the bargaining representative. Generally, the public body will designate a representative to meet with the representative of the employees. In this event, the public body's representative acts essentially as a hearer and a receptor of the employees' petitions and remonstrances. His duty is to discuss them with the bargaining representative, and to fully apprise himself of the nature and extent of the proposals and grievances presented. The representative of the public body must then transmit to it, in written form, the proposals and grievances and the substance of the discussions. The public body must then give them its consideration "in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection."

In my view, the following should be added to the *Curators* observation, *supra:*

If the public body, as a result of such consideration, and in the exercise of its legislative discretion, adopts an ordinance affecting the employment relation between the public body and certain of its employees, the terms and conditions of such ordinance shall govern and control such relation until modified or repealed by subsequent ordinance duly enacted by the public body.

In May 1980, the City Council of Moberly enacted an ordinance providing, in part, for the operation of its fire department. This ordinance was legislative in character, involved an exercise of the governmental power of the council and, therefore, can be amended or repealed. However, unless and until amended or repealed, its provisions should be honored.

I withdraw my concurrence and dissent.