**Marvin A. NULL, et al., Appellants,**

v.

**CITY OF GRANDVIEW, Missouri, Respondent.**

**No. WD 34287.**

Missouri Court of Appeals, Western District.

April 17, 1984.

Charles C. Shafer, Jr., Kansas City, for appellants.

John C. Dods, Kansas City, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

SHANGLER, Presiding Judge.

The plaintiff Null, firefighter captain, employed by the City of Grandview and president of Local No. 1786 of the International Association of Firefighters [an unincorporated voluntary labor organization of the firefighters of that municipality], brought suit—both as an individual and on behalf of the labor union firefighter class—for declaratory judgment that an ordinance enacted by the municipal Board of Alderman was invalid for failure of the public body to meet and confer with the bargaining representative of the labor organization as required by the Public Sector Labor Law [§§ 105.500–105.530, RSMo Supp.1983]. The petition sought declarations also that the ordinance was discriminatory under the Missouri and United States Constitutions, for a restraining order against enforcement of the enactment, and for a return of damages and attorney fee.[1] The trial was to the court and judgment was rendered against the petition on the several counts. The adjudication was prefaced by determinations of fact and law.

This appeal contends that the declaration by the court that Ordinance No. 2808 was a valid enactment errs as a matter of law because the legislation was adopted prior to completion of discussions between the public body and the labor union and hence violated the substance of § 105.520 of the Public Sector Labor Law.

The City of Grandview and municipal firefighter employee union Local No. 1786 concluded a labor agreement in August of 1978 for a term of one year. The agreement [enacted as Ordinance No. 2575] provided for automatic extension of term for an additional year and also allowed unilateral termination. In December of 1979, the municipality gave notice of intention to terminate agreement, and the union—as also allowed by the undertaking—reciprocated by notice of intention to renegotiate various terms. The provisions of agreement the union intended for renegotiation included additional employee benefits and conditions of work. The representatives of the municipality and of the union convened a dozen times over a span of eight months to meet and confer on the aspects of a new agreement. In the course of these conferrals, the parties came to accord on some issues and committed them to written memoranda. Then, in April of 1980, they reached impasse on the other issues and submitted to federal mediation. This intercession induced a tentative agreement on all issues except that of pay—a concurrence expressed in a memorandum of understanding. That proposed resolution of dispute was submitted to the City, on the one hand, and to the union membership, on the other. The Board of Aldermen endorsed the memorandum of understanding, but the union rejected the resolution.

The subjects of unresolved dispute were pay, vacation credit, and response time.

---

1. The petition undertakes to plead a class action and alleges the authority of Rule 52.08 for the procedure. The proper device for a class action relating to an unincorporated voluntary association—such as a labor union—however, is prescribed in Rule 52.10. *Sommer v. City of St. Louis*, 631 S.W.2d 676, 681[9–11] (Mo.App.1982). Such a class action, by the very terms of Rule 52.10, may be maintained only "if it appears that the representative parties will fairly and adequately protect the interests of the association and its members." The court made no such antecedent determination, nor entered any formal order to sanction Null as representative of the absent members. The findings of fact and conclusions of law make only a single reference to the assertion of a class proceeding—and that to declare that the evidence was not sufficient to sustain any relief as to any of the class members. The judgment itself only faintly intimates an adjudication against a class. That aspect of judgment, however, is not a subject of appeal.

[*Response time*—the period required for firefighters to respond to emergencies from their homes when off-duty was a consideration, therefore, which impinged on how far from the fire station the employee could reside.] These subjects, albeit unresolved, were fully discussed between the protagonists—and in the instances of vacation credit and response time, were modified by the city to more nearly conform with the union demand. Nonetheless, the Board of Aldermen at a regular meeting afforded the public and members of the union full opportunity to present views as to all the issues between the firefighters and the city. The Board of Aldermen then adopted a resolution to approve the terms of the memorandum of understanding yielded by the mediation and extended the date for the expiration of the 1978 agreement to allow time to draft a new agreement.

On September 23, 1980, as the extant agreement was about to expire, the Board of Aldermen enacted Ordinance No. 2808. The enactment incorporated what was denominated an "agreement," although the document in reference encompassed all the conditions and terms of employment, and included elements which, although discussed with the union, lacked its concurrence. The public employer and firefighter employees have since the adoption of Ordinance No. 2808 operated under its terms.

The Public Sector Labor Law grants employees of a public body [with exceptions] the right to form and join labor organizations and to present proposals to the public body, through a representative of choice, as to wages and conditions of employment [§ 105.510]. The public body is enjoined to *meet, confer* and *discuss* a proposal as to wages and conditions of employment presented by the exclusive bargaining representative of the labor organization, and then *upon completion of the discussions,* that the results be written for presentation to [in this case] legislative body for adoption, modification or rejection.

The union contends that there was no *completion of the discussions,* so that the

precondition of § 105.520 to a consummated labor agreement was not met, and hence Ordinance No. 2808 was not a valid regulation of employee wages and conditions of employment.

■ This argument confounds *agreement* with *completion of discussion.* The statute does not compel the public body to agree, but merely to meet, confer and discuss. *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35, 41[2–5] (Mo.1969). In that color of legislative purpose, a discussion is completed when agreement is no longer possible. The matter of compensation and conditions of work in public employment is a legislative exercise, and under the doctrine of separation of powers, may not be ceded by delegation or contract. *Sumpter v. City of Moberly,* 645 S.W.2d 359, 361 (Mo. banc 1983). Thus, the Public Sector Labor Law enables a public body to enact a proposal to which it agrees, but requires no agreement. But even agreement does not consummate into an enforceable collective bargain. Rather, the legislative function remains unimpaired to alter the subject of agreement by a successive ordinance. *Sumpter v. City of Moberly,* supra, l.c. 363, n. 4. The *meet, confer* and *discuss* schemes of the Public Sector Labor Law confirms nothing less than the constitutional right of public employees to peaceably assemble and to petition government for a redress of grievances. *Curators of the University of Missouri v. Public Service Employees Local No. 45,* 520 S.W.2d 54, 58 (Mo. banc 1975); *State ex rel. Missey v. City of Cabool,* supra, l.c. 41. The public employer acquits that right of petition by faithful discharge of the procedure, enacted by §§ 105.510· and 105.520. *Curators of the University of Missouri v. Public Service Employees Local No. 45,* supra, l.c. 57. The narrative of the evidence, all as facts found by the trial court, amply demonstrates compliance to the directives of the statute. That full consensus did not eventuate neither compromises the mandate of the statute nor invalidates the legislation which issued.

Two subjects on which discord remained were that of vacations and response time. Ordinance No. 2808 provided for disparate treatment as to those conditions of employment for firefighters employed before October 1, 1980, and those employed after that date.[2] The plaintiff Null attempts the contention that this difference in treatment between the old and new firefighters renders Ordinance No. 2808 unconstitutional as in violation of Mo. Const. Art. I, § 2 and of the 14th Amendment of the Constitution of the United States. We assume the plaintiff attempts to articulate the ground of invidious discrimination, but we may not rule any ground on surmise, least of all a constitutional question. The point on appeal lacks a sufficient articulation for that purpose. The argument, although perfervid, is no more informative. And the exposition is altogether without citation or development of relevant authority. A constitutional issue is not ready for appellate review, even if properly preserved at the trial, unless "adequately covered by the briefs on appeal." *Independent Stave Company, Inc. v. State Highway Commission*, 625 S.W.2d 246, 249[2] (Mo.App.1981). The question is not sufficiently presented by the mere mention in the point or by casual allusion in the argument. *St. Louis Teachers Association v. Board of Education*, 456 S.W.2d 16, 18[3, 4] (Mo.1970).

The judgment is affirmed.

---

**2.** Article XVI of Ordinance No. 2808 provides from 10 to 15 shifts of vacations per year for firefighters employed before October 1, 1980, and for the allowance of 7 to 12 shifts of vacations per year for those employed after that date.

Article XXVIII of Ordinance No. 2808 provides that no response time is required of firefighters employed before October 1, 1980, but that those employed after that date must reside within 25 minutes of the nearest fire station.