Larry REICHERT, et al., Appellants,

v.

**THE BOARD OF EDUCATION OF THE CITY OF ST. LOUIS,** Respondent.

No. SC 87911.

Supreme Court of Missouri, En Banc.

March 13, 2007.

Rehearing Denied April 17, 2007.

George O. Suggs, St. Louis, for Appellants.

James C. Hetlage, Kenneth C. Brostron, Timm W. Schowalter, St. Louis, for Respondent.

· Melissa Randol, Kyle Farmer, Columbia, for Amicus Curiae Missouri School Board's Association and Missouri Municipal League.

WILLIAM RAY PRICE, JR., Judge.

Plaintiffs, members of the International Union of Operating Engineers Local 2 ("Local 2"), filed a petition for injunctive relief and breach of contract seeking to enjoin the board of education of the City of St. Louis ("the Board") from terminating, suspending, or placing them on leave of absence without pay from their employment as stationary engineers while outsourcing their jobs to a private contractor. The trial court denied the motion for a preliminary injunction and the petition for breach of contract and permanent injunction.

The Court holds that the 2003 policy statement pursuant to which Plaintiffs were employed gave Plaintiffs no guarantee of employment and, therefore, the Court need not re-examine *Sumpter v. City of Moberly,* 645 S.W.2d 359 (Mo. banc 1982), or *Springfield v. Clouse,* 356 Mo. 1239, 206 S.W.2d 539 (banc 1947). The Court further holds that the Board's act of outsourcing stationary engineer positions while permanent, non-certificated stationary engineers remain on leave of absence constitutes a new appointment in violation of section 168.291.[1] The judgment of the trial court is reversed, and the case is remanded.

## I. Facts

The Board is an administrative body, existing by virtue of Missouri statute, vested with the supervision and governing of the public schools in the City of St. Louis. Plaintiffs are twenty-five individuals who were employed by the Board as stationary engineers, pursuant to a policy statement,[2] and represented by Local 2 in regard to wages, hours and working conditions. At the time Plaintiffs filed their petition, they were employed by the Board as non-certificated employees, and their appointments had become permanent under section 168.281, RSMo Supp.2006. Ordinance 65201 of the City of St. Louis requires the Board to have licensed stationary engineers maintain and operate the nine high pressure boilers it owns within the City of St. Louis. As stationary engineers, Plaintiffs maintained and operated those high pressure boilers.

The Board's 2003 policy statement governed the stationary engineers' salaries and other terms and conditions of employment. The policy statement provided that its terms were to remain in effect from July 1, 2003, through June 30, 2008. It expressly recognized that the management of the school system and the direction of all employees are reserved exclusively to the Board. It further provided that the Board or its representatives could make changes to its policies or regulations to the extent that they affect the terms and conditions of employment of employees upon giving "written advance notification to the Union, which would allow sufficient time

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

2. Under section 105.520:

   [A] public body or its designated representative or representatives shall meet, confer and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection.

   In this case, the results of the discussions between the representatives of the Board and Local 2 as to the employment of the plaintiffs were presented to, and adopted by, the Board in the form of a policy statement.

for discussion thereon prior to action by the Board."

On June 29, 2005, representatives of the Board met and conferred with representatives of Local 2. During that meeting Local 2 was notified of the Board's intention to: (1) limit the job duties of stationary engineers to those duties that are required by city ordinance; (2) reduce the number of stationary engineers based on the Board's determination that it had insufficient funds to continue to employ its own stationary engineers; and (3) outsource the stationary engineers' duties to Sodexho Operations, L.L.C. ("Sodexho"). Representatives of the Board advised Local 2 that such actions were necessary due to insufficient funds. The representatives of the Board provided a document to Local 2 showing that the layoff and outsourcing would lead to substantial cost savings for the Board.

On July 12, 2005, the Board, without the consent of Local 2 or the Plaintiffs, voted to amend the terms of the original policy statement to implement the above listed changes. Subsequently, the Board placed Plaintiffs on a leave of absence without pay pursuant to section 168.291 and contracted with Sodexho to perform the operation of the boilers. The Board informed Plaintiffs they would be paid through July 31, 2005, but after that time they were to receive no wages or fringe benefits, nor would they be allowed to participate in the retirement system established for employees of the Board. Since July 31, 2005, Sodexho has provided the licensed stationary engineers to operate and maintain the high pressure boilers located in the St. Louis public schools.

Plaintiffs contend that *Sumpter,* 645 S.W.2d 359, and *Clouse,* 206 S.W.2d 539, were wrongly decided.[3] They argue that they are entitled to relief because once the Board adopts the terms and conditions discussed at a meeting held in accordance with 105.520, it may not unilaterally alter those terms and conditions. Plaintiffs further argue that because they are permanent employees, section 168.291 prohibits the Board from outsourcing the stationary engineer duties while Plaintiffs remain on a leave of absence without pay.

## II. Discussion

### A. Standard of Review

██ On appeal, the Court reviews the judgment of the circuit court, not the decision of the Board. *State ex rel. Straatmann Enterprises, Inc. v. County of Franklin,* 4 S.W.3d 641, 645 (Mo.App. 1999). Appellate review of the circuit court's judgment in a non-contested case is essentially the same as for other judgments in a judge-tried case. *Id.* "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### B. The Policy Statement Did Not Guarantee Plaintiffs' Employment

██ The 2003 policy statement governed the stationary engineers' salaries,

3. In *Clouse,* this Court concluded that article I, section 29 of the Missouri Constitution gives private employees the right to bargain collectively through representatives but does not confer collective bargaining rights upon public employees. *Clouse,* 206 S.W.2d at 545–46. In *Sumpter,* this Court held that the results of discussions between representatives of a public employer and employees pursuant to section 105.120 cannot result in a binding collective bargaining contract. *Sumpter,* 645 S.W.2d at 363.

hours of work, leave, benefits and other terms and conditions of employment. Article XV of the policy statement contains the following language: *"Duration* : The terms of this policy statement shall remain in effect from July 1, 2003—June 30, 2008." Plaintiffs argue that the trial court erred in holding that the policy statement adopted by the Board did not guarantee Plaintiffs' employment for that period.

However, the policy statement provides no guarantee that Plaintiffs or any other employees will be employed as stationary engineers for the entirety of that period. Article I of the policy statement expressly recognizes that the management of the school system and the direction of all employees are reserved exclusively to the Board, except that any action by the Board shall not be inconsistent with the provisions of the policy statement. The article further states, in relevant part:

> *Management Prerogatives* : The Board or its representatives *shall make no changes* to its policies or regulations to the extent that they affect the terms and conditions of employment of Employees as addressed in the Policy Statement *without having given written advance notification to Union, which would allow sufficient time for discussion* thereon prior to action by the Board and/or any standing committee of the Board, if such discussion is requested by the Union.

(emphasis added).

The above-quoted language leaves no doubt that, under Article I, the Board was free to alter the policy statement so long as Local 2 received notification of such intent in sufficient time to discuss proposed changes. This is consistent with section 105.520, which provides only that representatives of the Board shall "meet, confer and discuss such proposals relative to salaries and other conditions of employment." Sec. 105.520. The parties agree that representatives of the Board notified Plaintiffs of the Board's plan to alter the terms of the policy statement and that representatives of the Board met with representatives of Local 2 to discuss the Board's intention to outsource the stationary engineer positions. The Board's action was not inconsistent with the provisions of the policy statement, and Plaintiffs had no further rights under the policy statement. Because the policy statement gave the Plaintiffs no guarantee of employment, *Sumpter,* 645 S.W.2d 359, and *Clouse,* 206 S.W.2d 539, need not be addressed.

## C. Outsourcing Duties of Permanent Employees Violates Section 168.291

### i.

The second issue in this case is whether, under 168.291, the Board may outsource the positions of non-certificated, permanent employees who are placed on leave of absence because of insufficient funds, decrease in pupil enrollment or lack of work. "The seminal rule of statutory construction directs this Court to determine the true intent of the legislature, giving reasonable interpretation in light of the legislative objective." *ACME Royalty Co. v. Dir. of Revenue,* 96 S.W.3d 72, 74 (Mo. banc 2002). Construction of statutes should avoid unreasonable or absurd results, *Murray v. Missouri Highway and Transp. Comm'n,* 37 S.W.3d 228, 233 (Mo. banc 2001), and the Court has no authority to read into a statute a legislative intent contrary to the intent made evident by the plain language, *Kearney Special Rd. Dist. v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc 1993).

### ii.

Chapter 168, RSMo Supp.2006, regulates the employment practices of Missouri school districts. Section 168.251 reads:

1. All employees of a metropolitan school district shall be appointed and promoted under rules and regulations prescribed by the board of education of the school district. The rules shall be complementary to the provisions of sections 168.251 to 168.291 as to the removal, discharge, suspension without pay or demotion of permanent employees and not in derogation thereof. The word "employee" or "employees" as used in this section means all employees, male or female, except certificated employees.

Once a non-certificated employee has completed the applicable probationary period, he or she obtains permanent status. Sec. 168.281.1, RSMo Supp.2006.[4] The statutory scheme prevents school districts from treating permanent employees as "at will" employees. Sections 168.211 to 168.291, RSMo Supp.2006 (governing the termination of all employees from the Superintendent to non-certificated permanent employees). The Board may not rescind its

decision to employ an individual without complying with those sections. The plaintiff engineers in this case are non-certificated permanent employees and, as such, termination of their employment is governed by sections 168.281, RSMo Supp. 2006, and 168.291.

Under section 168.281.2(1), RSMo Supp. 2006, permanent employees may not be terminated except for cause or upon attainment of the age of compulsory retirement.[5] However, the protections granted to non-certificated permanent employees under 168.281, RSMo Supp.2006, shall not "in any way restrict or limit the powers of the board of education to make reductions in the number of employees because of insufficient funds or decrease in pupil enrollment or lack of work." Sec. 168.281.3.[6] The power of the Board to make those reductions is governed by section 168.291. Section 168.291 reads, in relevant part:

> Whenever it is necessary to decrease the number of employees because of insuffi-

---

**4.** 1. After completion of satisfactory probationary service, appointments of employees shall become permanent subject to removal for any one or more causes herein described as well as to the right of the board to terminate services of all who attain the age of compulsory retirement fixed by the retirement system.

Sec. 168.281.1.

**5.** Section 168.281 reads, in relevant part:

> 1. After completion of satisfactory probationary service, appointments of employees shall become permanent subject to removal for any one or more causes herein described as well as to the right of the board to terminate services of all who attain the age of compulsory retirement fixed by the retirement system.
>
> 2. (1) No employee whose appointment has become permanent may be removed, aside from compulsory retirement, except for one or more of the following causes: immorality, felony conviction of a crime under any state or federal criminal statute, inefficiency or incompetency in line of duty, violation of the published regulations of the

school district, violation of the laws of Missouri governing the public schools of the state, or that his physical or mental condition is such that it incapacitates him from properly performing his duties or from properly associating with children, and then only after the personnel director has given written notice to the employee by registered mail with return receipt of his suspension and proposed discharge.

**6.** 3. No employee whose appointment has become permanent shall be suspended without pay, nor be demoted nor shall his salary be reduced unless the same procedure is followed as herein stated for the removal of the employee because of inefficiency in line of duty, and any employee whose salary is reduced or who is demoted may waive the presentment of charges against him and a hearing thereon by the committee. Nothing herein shall in any way restrict or limit the powers of the board of education to make reductions in the number of employees because of insufficient funds or decrease in pupil enrollment or lack of work.

Sec. 168.281.3.

cient funds or decrease in pupil enrollment or lack of work the board of education may cause the necessary number of employees, beginning with those serving probationary periods, to be placed on leave of absence without pay, but only in the inverse order of their appointment. Each employee placed on leave of absence shall be reinstated in inverse order of his placement on leave of absence. Such reemployment shall not result in a loss of status or credit for previous periods of service. *No new appointments shall be made while there are available employees on leave of absence who have not attained the age of seventy years and who are adequately qualified.*

(emphasis added). The statute expressly states that once the Board, in its discretion, determines it necessary to lay off employees because of insufficient funds or decrease in pupil enrollment or lack of work, the Board may not make "new appointments" while employees under the age of seventy and "adequately qualified" remain on leave and available to work.

### iii.

The question, then, is whether the outsourcing of the stationary engineer positions by the Board constitutes "new appointments." These words are not defined in the statute. However, the word "appoint" is defined in Webster's as "designate, or place in office or post," and the word "appointment" is defined as "designation of a person to perform a function." Webster's Third New International Dictionary, Unabridged, 1981.

Sections 168.281, RSMo Supp.2006, and 168.291 were enacted to ensure non-certificated employees of schools a minimal level of job security. Section 168.281, RSMo Supp.2006, prohibits the termination of an employee for reasons other than cause or compulsory retirement. Section 168.291 permits the Board to decrease the number of employees, but only for a finite number of reasons: because of (1) insufficient funds; (2) decrease in pupil enrollment; or (3) lack of work. Sec. 168.291. The Board may place the "necessary" number of employees on leave, but no more. Id. The Board may not arbitrarily lay off employees; it is required to do so in inverse order of appointment. Id. Finally, the statute establishes the right of the employees to be recalled, thereby providing those employees with some protection in the event they are placed on a leave of absence. Employees shall be reinstated in inverse order of their placement on leave, and no new appointments shall be made while available employees remain on leave. *Id.*

■ The outsourcing of jobs while employees remain on leave is inherently inconsistent with the three allowable grounds for layoff under 168.291. The intent to provide job security evidenced by the statute would be rendered irrelevant if the Court were to hold that the Board is allowed to outsource the positions of employees placed on leave of absence pursuant to section 168.291. If sufficient funds, work, or an adequate number of pupils exist, section 168.291 expressly forbids the Board from directly hiring others to perform the jobs of the furloughed employees. The Board cannot frustrate the statute by indirectly contracting with third parties to accomplish the very same thing. New individuals placed in the same jobs as former Board employees constitute "new appointments" under section 168.291 whether they are direct hires or hired by way of an outsourcing contract.

This holding should not be interpreted as preventing the Board from placing the necessary number of stationary engineers on leave. Courts may not substitute their judgment for that of the Board and second

guess the Board's determination that placing Plaintiffs on leave is necessitated by insufficient funds. The Court only holds that the term "new appointments" contained in section 168.291 includes the practice of outsourcing.

### III. Conclusion

The judgment of the trial court is reversed, and the case is remanded.

All concur.