**James K. WOODARD, Craig Lee Connell and Frank Ancona, Individually and as Representatives of the Class Consisting of All Aggrieved Bargaining Unit Employees Represented by School Service Employees Union Local 12 in the School District of Kansas City, Respondents,**

v.

**The SCHOOL DISTRICT OF KANSAS CITY, MISSOURI, Appellant.**

**No. WD 47261.**

Missouri Court of Appeals, Western District.

Jan. 25, 1994.

Rehearing Denied March 1, 1994.

Basil L. North, Jr., Gayle E. Townsend, Kansas City, for appellant.

Scott A. Raisher, Frederic O. Wickham, Brian P. Wood, Kansas City, for respondents.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

The Kansas City School District appeals the trial court's ruling that it cannot refuse to give members of the School Service Employees Union Local 12 pay increases without meeting with their representatives to confer about the matter. The union represents all of the district's operating, maintenance, warehouse and food service employees. We reverse the trial court's judgment and remand the matter for further proceedings.

The district and the union confer annually about union member's salaries and employment conditions. Typically, district and union officials exchange written proposals before the meetings by the entities' negotiators. In times past, when negotiators have agreed on various issues, they have put their agreement in a document entitled "Tentative Conclusions" and have submitted it to the district's school board and the union's members for ratification. When tentative conclusions have been approved by the school board and

the members, its terms have been incorporated into the employee's handbook.

The district publishes the employee handbook annually. It puts salary schedules and other employment terms and conditions in the handbook. Each year's handbook is effective only for the fiscal year in which it is published.

In April 1988, the union asked the district to meet to discuss employee proposals for the 1988–89 school year. District and union officials exchanged written proposals as they had in previous years outlining issues each wanted to discuss. The proposals did not mention items which neither wanted to discuss. The union did not mention in its proposal salary step increases for its members. Nor did the district propose to forego step increases for the 1988–89 school year. The entities' negotiators met in several meetings from May to October 1988.

The district's employee handbook for 1988 contained salary schedules which included step increases. In previous years, union members had received step pay increases even though the union had not mentioned step increases in its proposals to the district.

On July 1, 1988, the district did not give step increases to the union members. Union officials did not discover the lack of raises until September 1988. When they did learn of it, they raised the matter at their next meeting with district negotiators. The district's negotiators told the union negotiators that they were unaware that the step increases had not been paid and asked for time to investigate the matter.

On October 4, 1988, the negotiators met again, and the district negotiators told the union negotiators that the district had decided not to give step increases that year.

On January 24, 1989, the district's school board approved the 1988 tentative conclusions. These did not mention step increases.

After exhausting their administrative remedies, the union sued the district in a three-count petition. In Count One, the union alleged that the district's failure to pay step increases violated § 105.520, RSMo 1986, the district's policies, and the employee handbook. In Count Two, the union appealed the district superintendent's denial of its grievance alleging that failure to give the step increases violated district policies and the employee handbook. Count Three alleged that the district had breached its contract with the union members by refusing to give the step increases.

After a hearing, the trial court found that the district violated § 105.520 by failing to confer with the union about the step increases before deciding not to grant them. The trial court ruled that the district's failure to confer "rendered the District's action null and void as a matter of law." The trial court awarded the union members $116,486 in damages and pre-judgment and post-judgment interest at 9 percent per annum.

The district appeals. It asserts that the trial court erred in applying § 105.520 to this dispute. We agree.

Section 105.520 provides:

Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative or representatives shall meet, confer and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection.

■ The cardinal principle of statutory interpretation is to ascertain the legislature's intent as manifested in the statute's plain and ordinary meaning. *Citizens Bank and Trust Company v. Director of Revenue*, 639 S.W.2d 833, 835 (Mo.1982).

■ Section 105.520 is a mandate that the district negotiate and consider whatever proposal the union wants to make on behalf of its members. It is not a requirement that the district first negotiate with the union before legislating salaries and benefits for its

employees. "The determination of wages, tenure and work conditions of public employees is a legislative prerogative not subject to delegation or contract." *State of Missouri, ex inf., Ashcroft v. Kansas City Firefighters Local No. 42,* 672 S.W.2d 99, 113–14 (Mo. App.1984).

Had the union wanted to discuss step increases with the district and had it reduced the matter to a proposal, § 105.520 would have required the district to negotiate and to consider the matter. The union made no proposal. Section 105.520 is not implicated in this case.

This is not to say that the district was under no obligation to give step increases. Indeed, the union charged in its complaint that the district was obligated by its contract with the union and by its policies to give the increases. It also challenged the superintendent's denial of its grievance as unlawful. The trial court looked past these allegations and based its decision only on § 105.520. We have no basis for resolving the validity of the alternative claims. Hence, we reverse the trial court's judgment and remand the case for the trial court to address the other causes of action.

All concur.