## LOCAL 781 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, Appellant,

v.

## CITY OF INDEPENDENCE, Respondent.

### No. WD 56385.

Missouri Court of Appeals, Western District.

July 13, 1999.

William A. Jolley, Kansas City, for appellant.

Elaine K. Koch, Kansas City, for respondent.

Before LAURA DENVIR STITH, Presiding Judge, Judge HAROLD L. LOWENSTEIN, and Judge ALBERT A. RIEDERER.

LAURA DENVIR STITH, Presiding Judge.

Local 781 International Association of Firefighters, AFL–CIO, appeals the judgment of the circuit court sustaining the City of Independence's motion for summary judgment on Local 781's action to compel the City to arbitrate a grievance filed by Local 781. In the suit, Local 781 alleges that it had a right to submit the grievance to an arbitrator pursuant to Section 23.3 of certain Interim Work Rules adopted by the City in September 1994, and that the City breached those Rules in refusing to submit the claim to an arbitrator. The circuit court denied the claim on the basis that the Interim Work Rules do not provide for arbitration of the grievance at issue, since it involves the establishment or change of wage rates, that the delegation to an arbitrator of the power to establish or change wage rates would be an unconstitutional delegation of legislative authority, and that in any event Local 781's appeal of denial of its grievance was untimely. Local 781 appeals this determination. Because we find that the Interim Work Rules do not provide for arbitration of this grievance, in that it involves the

establishment or change of a wage rate, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant City of Independence operates a fire department to provide fire protection and emergency medical services for its residents. Plaintiff Local 781, a labor organization, represents the employees of the City's fire department. From January 1, 1990 until January 1994, the City and Local 781 were parties to a contract providing for salaries, benefits, seniority, vacation, holidays, uniforms, and other working conditions of the firefighters. This contract also contained a schedule of compensation, described as "Table A." This schedule provided for merit increases in compensation for members of the fire department effective on July 1, 1991, and again on December 1, 1991. It further provided for certain wage increases for probationary employees once their probationary period successfully ended. However, on June 21, 1992, the City passed Resolution Bill No. 92–292, declaring a moratorium on all merit increases for all employees covered by the City of Independence. This resolution froze all merit increases for the fiscal year beginning July 1, 1992 for the purpose of balancing the City's budget, and was to continue in effect until the City had enough money to fund wage increases, at which point a new resolution would be enacted.

On January 5, 1993, several members of Local 781 filed grievance 93–01 protesting the moratorium on wage increases. The City scheduled a hearing in response to the grievance for April 22, 1993. On or about April 19, 1993, however, Local 781 informed the City that it was withdrawing its grievance. The moratorium continued in effect.

Following the expiration of the 1990 contract in 1994, the City conferred with Local 781 in order to reach an agreement on a future contract as required by statute. On September 20, 1994, the City Counsel of Independence passed Ordinance No. 12847, adopting the "Interim Work Rules." These Interim Work Rules were to serve as a bridge between the expired 1990 contract and any future contract to be agreed to between the parties. No new contract has been agreed on, and the Interim Work Rules thus remain in effect.

The Interim Work Rules provide that disputes involving the interpretation or application of the provisions of the Interim Work Rules are required to be presented to the bargaining unit member's immediate supervisor within 10 working days "of the date on which the cause of the grievance was known to the bargaining unit member or could reasonably be expected to have been known," or the grievance "shall be considered dropped." The Rules provide that any grievance or dispute as to the application or interpretation of the provisions of the Interim Work Rules is to be handled in up to four progressively more formal steps, potentially culminating in appeal to either the City Personnel Board or to an arbitrator. The Rules themselves also provide, however, that "the arbitrator shall have no power to establish or change any wage rates."

On August 22, 1995, Local 781 filed another grievance, grievance 95–12, also based on the wage increase moratorium. The City denied the grievance and refused to submit the issue to arbitration, finding that the most recent grievance was merely an attempt to revive the original grievance filed and dismissed in 1993 and therefore was untimely.

No further action was taken until September 18, 1996, when both parties acknowledge that Local 781 filed grievance 96–14 ("G96–14"), protesting the moratorium for the third time. Both parties acknowledge that the City refused to process G96–14, and informed Local 781 that the Interim Work Rules' grievance procedure was not an appropriate mechanism for resolving the dispute.

As a result of the City's refusal to process G96–14, Local 781 filed a Petition for Declaratory Judgment in Jackson County Circuit Court on March 28, 1997 alleging breach of contract and requesting that the court order the City to submit the issue to arbitration and to compensate Local 781 for costs and attorney's fees. On May 19, 1997 the City filed an answer denying the allegations. During the next 14 months, both parties filed motions for summary judgment and numerous responses, replies, and suggestions in support. On August 12, 1998 the Jackson County Circuit Court issued an order and judgment granting the City's motion for summary judgment. The court found that wage rates were expressly excluded from the arbitration process, and, moreover, that Local 781 exhausted its remedy when it withdrew its initial grievance in 1993. Local 781 appeals.

## II. STANDARD OF REVIEW

■ Interpretation of a contract is a question of law which is subject to de novo review. *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 850 (Mo. banc 1960); *Wallace Saunders, et al. v. Rahm*, 963 S.W.2d 419, 422 (Mo.App. W.D.1998). When interpreting a contract, the overriding concern of this Court is to give effect to the intentions of the parties. *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896, 901 (Mo. banc 1990).

## III. INTERIM WORK RULES

■ Local 781 argues that it is entitled to step wage increases it says were agreed to by the City in its Interim Work Rules adopted by Ordinance in September 1994, and that its grievance G96–14 addressing this issue should have been sent to the arbitrator for determination. Local 781 argues that the Interim Work Rules govern the relevant rights of the parties, and that those rules commit the issue of the City's obligation to pay step wage increases to arbitration. The City counters: (1) that the Interim Work Rules do not

govern since they were not signed by the union; (2) that even if they do govern, they do not commit the issue of step wage increases to arbitration, but rather specifically exclude them from issues which shall be committed to arbitration; (3) that it would be an unconstitutional delegation of the City's legislative power to delegate the issue of step wage increases to an arbitrator; and (4) that, in any event, Local 781 untimely filed grievance G96–14 and its request to arbitrate and hence is not entitled to arbitration. We find dispositive the City's argument that the issue is not committed to arbitration under the Interim Work Rules, and therefore need not reach the other issues raised by the parties.

■ The parties agree that, in determining whether the grievance filed by Local 781 is subject to arbitration under the Interim Work Rules, we must be guided by certain fundamental principles concerning the power of a court to determine an issue relating to the arbitrability of a dispute. In particular, the question whether an agreement commits an issue to determination by an arbitrator is a matter for determination by the court. If the court determines that the matter is not committed to arbitration by the agreement, then it may proceed to decide the issue. If, however, the court determines that the matter is committed to arbitration by the particular agreement, then the court must send the case for arbitration, without reaching any issue concerning the merits of the underlying grievance. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649–650, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648 (1986); *St Luke's Hospital v. Midwest Mechanical Contractors*, 681 S.W.2d 482, 487 (Mo.App. W.D.1984).

■ As applied here, that means that it was up to the trial court to determine whether the Interim Work Rules committed grievance G96–14 about step wage increases to arbitration. If so, then the court should have left a determination of the merits of the grievance, including the

timeliness of its filing, to the arbitrator; if not, then it was proper for the court to go on and determine the merits of the grievance. As Local 781 notes, in deciding whether the Interim Work Rules make the issue of step wage increases a matter for determination by the arbitrator, the Court was required to keep in mind the admonition of the United States Supreme Court in *AT & T Technologies,* that:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'

*AT & T Technologies Inc.,* 475 U.S. at 650, 106 S.Ct. 1415 (citations omitted).

We now turn to the relevant provisions of the Interim Work Rules to determine whether or not the issue of step wage increases is committed to arbitration. Section 23.1 of the Interim Work Rules provides that "the following procedure will be observed in the handling of grievances and complaints involving the application or interpretation of the terms and provisions of these Interim Work Rules." Section 23.3 provides that:

> Should any dispute or grievance arise between the City and its bargaining unit members with regard to the application or interpretation of the terms and provisions of these Interim Work Rules, such dispute or grievance shall be settled in the following manner:

As noted earlier, Section 23.3 of the Interim Work Rules then provides four steps for resolution of disputes or grievances, the fourth and final step of which allows submission of the dispute or grievance to the City Personnel Board or to an arbitrator. In the case at bar, the union sought to submit the grievance to an arbitrator pursuant to Step 4. Subsection B(2) of Step 4 states:

> 2. Decision of Arbitrator – The decision of the arbitrator shall be subject to the following conditions:
>
> . . . .
>
> (c) The arbitrator shall have no power to add to, subtract from or modify any of the terms of these Interim Work Rules. *The arbitrator shall have no power to establish or change any wage rates.*

(emphasis added).

The City and Local 781 agree that these provisions of the Interim Work Rules determine whether or not the issue of step wage increases is subject to arbitration. They also agree that these Rules provide that the arbitrator has no authority to "establish or change any wage rates," and that if this was the relief Local 781 requested in its grievance, it would not be entitled to submit it to arbitration under the Interim Work Rules.[1] Local 781 argues, however, that it is not requesting the arbitrator to establish or change any wage rates. Rather, Local 781 says, it believes that the City has already granted the wage increases, and all the union is requesting is that the arbitrator so declare and order the City to begin paying the wage increases it has already adopted.

Unfortunately, Local 781 never explains anywhere in its brief where and how it claims that the City has already established the wage increases it says it simply wants the arbitrator to order the City to begin paying. From our review of the City's brief and the Legal File, and from Local 781's response to questions at oral argument, it appears that it argued below that certain provisions of the Interim Work Rules provided for step increases, as did a document entitled "Table A." However, Local 781 has not included a copy of

---

1. We note that, had Local 781 chosen to instead submit the issue to the Personnel Board, the Board is also bound by a rule providing that "the Personnel Board shall have no power to establish or change any wage rates." Section 23.3, Step 4(A)(2)(a).

__IMAGE__

grievance G96–14 in the record, so we have no way of definitely determining the substance of the grievance, much less that it does not involve establishment or change of a wage rate.

Moreover, Local 781 has only included selected portions of the Interim Work Rules in the record on appeal, and none of the sections included even mention step wage increases, much less do they appear to set specific wage rates, and nothing in the record suggests that sections of the Rules not included contain such step wage increases. Similarly, nothing in the record indicates that "Table A" is a part of the Interim Work Rules. Apparently, it was appended to the contract between the City and Local 781 which expired in 1994. No one showed it was made a part of the Interim Work Rules adopted in September 1994,[2] and, in fact, by that point, the City had already adopted the moratorium on wage increases which is the subject of this grievance, and provided that the moratorium would be lifted only by subsequent resolution. No such subsequent resolution has been adopted. This means that there is nothing in the record to support the union's claim that the City had already established wage increases, or that it simply wants the arbitrator to compel the City to comply with its existing agreement. For these reasons alone, we would affirm.

Even more basically, the relief which Local 781 says it requested in its grievance would clearly require the arbitrator to change or establish wage rates. "Change" means "to undergo substantial substitution or replacement or to be wholly replaced; to increase or decrease." Webster's Third New International Dictionary 374 (1993). "Establish" means "to settle or fix after consideration or by enactment or agreement." *Id.* at 778. The union wants the

arbitrator to compel the City to pay its members at a higher wage rate than they have been paid previously by paying step wage increases. This would clearly establish or change wage rates for firefighters, and would reverse the City's current policy of freezing wage rates and of refusing to grant step wage increases. Because the Interim Work Rules specifically provide that the arbitrator has no authority to establish or change wage rates, the grievance is not subject to arbitration. Accordingly, the decision of the trial court is affirmed.

Judge HAROLD L. LOWENSTEIN and Judge ALBERT A. RIEDERER concur.

**2.** Based on our review of the briefs filed below, Local 781 apparently relied in the court below on Table A and various sections of an unidentified earlier agreement between the parties to support its argument, presumably the 1990 contract. As just noted, the Interim Work Rules are not the same as the 1990 contract. In this Court, Local 781 has dropped any explicit claim that any specific section of the Interim Work Rules actually provide for a step wage increase, and simply argues that wages were already set, citing nothing to support its assertion.