INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 53, Appellant,

v.

CITY POWER & LIGHT DEPARTMENT, CITY OF INDEPENDENCE, MISSOURI, Respondent.

No. WD 62663.

Missouri Court of Appeals, Western District.

Nov. 12, 2003.

J. Richard Waers, Kansas City, KS, for appellant.

Michael F. Delaney, Kansas City, MO, for respondent.

Before: THOMAS H. NEWTON, P.J., PATRICIA A. BRECKENRIDGE and PAUL M. SPINDEN, JJ.

THOMAS H. NEWTON, Presiding Judge.

The International Brotherhood of Electrical Workers, Local Union No. 53 ("Union") and the City Power & Light Department, City of Independence, Missouri ("City") were parties to an Agreement establishing terms and conditions of employment for certain public employees, which included an arbitration procedure. The Union sought to compel the City to arbitrate a dispute over wages based on a belief that the Agreement required arbitration in this situation, despite a prohibition in the Agreement against the arbitrator establishing wages and the settled law that setting wages of public employees is the sole prerogative of the legislature. The trial court granted the City's motion for summary judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Union filed an action seeking to compel arbitration of a dispute arising under a labor agreement between the Union and the City. The parties filed cross-motions for summary judgment, including stipulated facts. The trial court granted the City's motion for summary judgment and denied the Union's motion.

The City has recognized the Union as the exclusive collective bargaining agent for certain employees of the City with the City Power & Light Department. The City and the Union are signatories to an Agreement [1] that governs the terms and conditions of employment for those em-

---

1. The Union refers to this agreement as a collective bargaining agreement, while the City simply calls it an Agreement. The differing terminology likely arises from the fact that the Public Sector Labor Law §§ 105.500–105.530, RSMo.2000, gives public employees the right to organize and present proposals for working conditions to a public body and the public body may then choose to adopt, modify, or reject those proposals, but it does not allow for a binding collective bargaining agreement to be created. *Sumpter v. City of Moberly*, 645 S.W.2d 359, 363 & n. 4 (Mo. banc 1982). Because this case does not concern whether the Agreement is a collective bargaining agreement, we refer to it as the Agreement throughout.

ployees. Included in that Agreement is an addendum titled "EXHIBIT 'A' Job Classifications and Wage Rates," which lists information for all employees covered by the Agreement.

In January 2000, the Union filed three separate petitions for certification of representation with the Missouri Department of Labor and Industrial Relations, State Board of Mediation ("Board"), seeking self-determination elections for three groups of employees. The only group at issue here is the Inventory Control Technicians in the Support Services Division. A pre-election telephone conference was held in March 2000, to discuss the procedures for conducting the elections. It was agreed that the Inventory Control Technician position would be included within the larger existing unit if the person in that position voted for union representation. But there was no discussion or agreement as to whether any of the terms of the parties' Agreement covering the larger existing unit would be extended to cover the Inventory Control Technician position. The stipulations for the elections put the other two groups of employees into one unit and "an appropriate unit consisting of Inventory Control Technicians in the Support Services Department; excluding all others" in a separate unit.

In April 2000, the Board held a self-determination election for the two units and the sole person holding the position of Inventory Control Technician II voted for union representation. In May 2000, the Board certified the Union as the collective bargaining agent for "a unit consisting of Inventory Control Technicians in the Support Services Department; excluding all others." Because this position was a new classification, it was not listed on Exhibit "A."

Negotiations began over the terms and conditions of employment for the Inventory Control Technician. A tentative understanding was reached for many issues, but the parties were unable to reach an agreement on appropriate wages and benefits to be paid for this position. In January 2001, the Union requested that the City submit these issues to arbitration pursuant to Article VI, Section 1 of the Agreement. The City refused.

The Union then sought to compel arbitration and claimed the City breached its Agreement with the Union. The parties filed cross-motions for summary judgment. The trial court granted the City's motion, finding both that the Agreement itself did not require arbitration for disagreements over wage rates and that the Agreement could not have required it because that would have been an unlawful delegation of legislative prerogative. The Union appeals, asserting that the trial court erred in granting the City's motion because a presumption of arbitrability exists and the City has not delegated its legislative prerogative to establish wages.

## II. STANDARD OF REVIEW

The trial court shall enter summary judgment only if "the motion, the response, [and] the reply ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).[2] The appellate court reviews the grant of summary judgment essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and the non-movant is given the benefit of all reasonable inferences from the record. *Id.*

---

**2.** Unless otherwise indicated, all rules refer to Missouri Court Rules (2003).

The moving party's entitlement to judgment as a matter of law revolves to a great extent around whether that party is the claimant or the defending party. *Id.* at 381. The claimant is the party "seeking to recover," and the defending party is the party "against whom a claim ... is asserted." Rule 74.04(a) & (b). The City is the defending party because its summary judgment motion was in response to the claims asserted by the Union. The City is not required to controvert each element of the Union's claims in order to establish its right to summary judgment. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. Instead, the City can establish its right to judgment by showing (1) facts that negate any one of the Union's elements; (2) that the Union, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of its elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the City's properly-pleaded affirmative defense. *Id.* The City relied on the first method by presenting facts that negated the Union's claim that there was a requirement of arbitration that the City breached. Because the parties filed a joint stipulation of facts, the only issue is whether the trial court's judgment was correct as a matter of law. *A & L Holding Co. v. S. Pac. Bank*, 34 S.W.3d 415, 417 (Mo.App. W.D.2000).

## III. LEGAL ANALYSIS

The Union raises two points on appeal. First, the trial court erred in finding the City had no obligation to arbitrate the wage issue because a presumption of arbitrability exists. The Union claims that the Agreement is, at most, ambiguous about the City's duty to arbitrate this matter and, therefore, should be resolved in favor of arbitration. The second point is that the trial court erred in suggesting that enforcing the City's obligation to arbitrate this matter would be an impermissible delegation of the legislative prerogative to establish the economic benefits of city employees. The Union maintains that there has not been a delegation of authority because the City could choose to repeal the Agreement to arbitrate at anytime.

### A. The Agreement applies to the Inventory Control Technician position.

■ The City asserts that the Agreement does not even apply to the Inventory Control Technician position and, therefore, it is immaterial whether wages are arbitrable. The stipulated facts state that the parties agreed, in a pre-election telephone conference, that "the Inventory Control Technician position would be included within the larger existing unit if that person voted for union representation."[3] But the parties never discussed whether the terms of the Agreement covering the larger existing unit would be extended to cover that position. The Agreement, however, specifically addresses this issue in Article VI, which states in pertinent part:

> Should the Utility find it necessary to create *new* classifications or change existing classifications ... [the parties] will negotiate the qualifications, job content, and wage rage for such *newly* cre-

---

**3.** It should be noted that the pre-election discussion also determined that the other two groups of employees would be combined into a separate group for the election and there was no suggestion that unit would become part of the larger existing unit. Although this does not answer the question of whether the Agreement covers the Inventory Control Technician position, it does suggest the position was going to be treated differently than the other employees voting for Union representation, by immediately including it into the larger existing unit.

ated or changed classifications. If the parties cannot agree upon the proposed *new* or revised job description the issue shall be submitted to an arbitrator pursuant to Article 23.

(emphasis added).

▪ Article VI addresses how the City and Union will deal with the creation of new classifications—negotiation and arbitration. If new classifications, such as the Inventory Control Technician position, are never included under the existing Agreement, then the word "new" in Article VI is superfluous. But when construing contracts, courts prefer to give meaning to each phrase, presuming that people do not intend nullities. *Tuttle v. Muenks*, 21 S.W.3d 6, 11–12 (Mo.App. W.D.2000). Applying this rule, the Agreement applies to the Inventory Control Technician position because the pre-election conference and Article VI together make this "new classification" a part of the existing bargaining unit.

## B. The Agreement does not require arbitration of wages.

▪ There are two relevant sections in the Agreement that relate to whether this dispute should be arbitrated. The pertinent part of Article VI, Section 1 states:

Should the Utility find it necessary to create new classifications or change existing classifications within the Bargaining Unit the Utility and the Union will negotiate the qualifications, job content, and wage rate for such newly created or changed classifications. If the parties cannot agree upon the proposed new or revised job description the issue shall be submitted to an arbitrator pursuant to Article 23.

The pertinent part of Article XXIII is in Section 4(c), which states, "The arbitrator shall have no power to establish or change any wage rates."

▪ Article VI establishes a duty to negotiate wages, but the duty to arbitrate covers only the job description. So the crux of this case is the meaning of "job description." When construing a contract, the intent of the parties governs. *Tuttle*, 21 S.W.3d at 9. The intent of the parties is discerned from the terms of the contract unless the language is ambiguous. *Langdon v. United Rests., Inc.*, 105 S.W.3d 882, 887 (Mo.App. W.D.2003). The Union asserts that "job description" was used as an all-inclusive term intending to cover everything discussed in the prior sentence. On the other hand, the trial court found that it was noteworthy that arbitration was limited to disputes over "job description" while negotiations were to be conducted over "qualifications, job content, and wage rate." The trial court determined that the plain meaning of those words suggests that qualifications and job content are contained within "job description" but wages are not.

▪ "A contractual provision is not ambiguous merely because the parties disagree over its meaning." *Armstrong Bus. Servs., Inc. v. H & R Block*, 96 S.W.3d 867, 874 (Mo.App. W.D.2002). We find that the trial court correctly construed "job description." A job description is "an orderly record of the essential activities involved in the performance of a task that is abstracted from a job analysis and used in classifying and evaluating jobs and in the selection and placement of employees." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1217 (3d ed.1993). This definition encompasses job qualifications and content, but not wages.

▪ Even if "job description" were not clear when considered alone, the other terms of the Agreement make it clear that wages are not included in that term. In order to determine the intentions of the

parties, the terms of the contract must be read as a whole and "a construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of them without function or sense." *Village of Cairo v. Bodine Contracting Co.*, 685 S.W.2d 253, 264 (Mo.App. W.D.1985). Article VI says it will be arbitrated pursuant to Article XXIII, which says the arbitrator has no authority over wages. If disagreements over the "job description" are arbitrable and the arbitrator cannot establish wages, then "job description" must not include wages.

The Union tries to resolve the conflict between its interpretation of Article VI and Article XXIII by claiming Article VI controls because it is a specific provision and Article XXIII is a general one. *See A & L Holding, Co.*, 34 S.W.3d at 418–19 (stating that "[g]enerally, in the construction of contracts, it is held that if the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should be held to operate as a modification an *pro tanto* nullification of the former.") (*quoting Surface v. Ranger Ins. Co.*, 526 S.W.2d 44, 48 (Mo.App.1975)). But this argument must fail. Article XXIII is the only provision that discusses arbitration; it mandates all the procedures for arbitration and establishes the boundaries for the arbitrator. Although Article VI applies to a specific situation, it says that any arbitration shall take place "pursuant to Article 23." Therefore, the limitations in Article XXIII apply to Article VI. If the parties had intended "job description" to include wages, Article VI could have specified that the prohibition in Article XXIII, Section 4(c) did not apply. Article XXIII clearly states that the arbitrator cannot establish wages. If this dispute about wages goes to the arbitrator, then he or she will be establishing wages. The Agreement does not suspend the effect of this prohibition for Article VI. So, to give a reasonable meaning to both Articles, wages are not within the purview of the arbitrator because they are not intended to be included within the term "job description." *Bodine Contracting*, 685 S.W.2d at 264. This is our view of the term "job description," so the City did not breach the Agreement and cannot be compelled to arbitrate.

The United States Supreme Court set out four principles to determine the arbitrability of an issue in *AT & T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal quotation marks and citations omitted). Second, whether a collective bargaining agreement creates a duty to arbitrate is an issue for judicial determination. *Id.* at 649, 106 S.Ct. 1415. Third, when a court is deciding whether the parties have agreed to submit an issue to arbitration, the court is not to rule on the merits of the underlying claims. *Id.* Fourth, where there is an arbitration clause, there is a presumption of arbitrability in the sense that a court should not deny an order to arbitrate unless it "may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* at 650, 106 S.Ct. 1415. (internal quotation marks and citation omitted).

Our analysis of the point concerns the first principle. The City never agreed to arbitrate wages and, therefore, cannot be compelled to arbitrate in this instance because the right to arbitration is contractual and the parties define the scope of any

agreement to arbitrate. *Bodine Contracting*, 685 S.W.2d at 263. The Union relies on the fourth principle, arguing that there is a presumption of arbitrability because nothing in Article VI specifically says that wages are not arbitrable. The Union claims there is, at most, an ambiguity because it cannot be said with positive assurance that "job description" excludes wages. But, as already discussed, "job description" is not ambiguous and Article VI is subject to Article XXIII. It may be said "with positive assurance" that wages are not arbitrable and so no presumption of arbitrability exists. The City specifically limited the power of the arbitrator, and the Agreement does not require arbitration of wages. *Cf. Local 781 Int'l. Ass'n of Firefighters v. City of Independence*, 996 S.W.2d 112, 115–17 (Mo.App. W.D.1999) (ruling that identical prohibitory language in an arbitration provision prevented the union from compelling arbitration to force the city to pay wage increases).

## C. Requiring arbitration over wages would be an unlawful delegation of legislative power.

The Union argues that because it merely seeks enforcement of the procedural mechanism to which the City bound itself, and not approval of terms and conditions of employment, the issue of delegation is not ripe for judicial review. But if the City were compelled to arbitrate this matter and the arbitrator established wages for the Inventory Control Technician position to which the City was bound, then the court would have tacitly approved those terms. Therefore, this matter is appropriately addressed at this time.

The law in Missouri is well established that "wages and hours must be fixed by statute or ordinance and cannot be the subject of bargaining." *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539, 543 (1947). Public office and employment cannot be a matter of bargaining and contract because the "qualifications, tenure, compensation and working conditions for any public service, involve[ ] the exercise of legislative powers." *Id.* at 545. The legislature cannot delegate its powers away—any such delegation is void—and also cannot bargain or contract away those powers. *Id.* The City, therefore, must determine wages for its employees, including the Inventory Control Technician, and Article VI, Section 1 of the Agreement violates the law if wages must be arbitrated.

The Union misunderstands the application of the Public Sector Labor Law, sections 105.500–105.530,[4] to this situation, claiming the City has bound itself to certain procedures for establishing wages. The Public Sector Labor Law requires the public body, or its representative, to meet, confer and discuss proposals about salary and conditions of public employment with the exclusive bargaining representative of its employees. § 105.520. After discussions are completed, the results are reduced to writing and submitted to the appropriate public body "in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection." *Id.* If the public body adopts the proposals, they become a binding ordinance until the body takes appropriate action to rescind the ordinance. *Sumpter*, 645 S.W.2d at 363 n. 4 (explaining that if the legislative body adopts the results of the discussions between the union and the public employer as an ordinance, the ordinance governs and is binding until changed by appropriate legislative action, but the union's approval is not required for any changes).[5]

---

4. Unless otherwise indicated, all statutory references are to RSMo. 2000.

5. This is explained more clearly in the *Sumpter* court's denial of a subsequent motion for

The Union asserts the City already exercised its legislative duty and prerogative when it initially adopted the Agreement. The Union claims that the City has bound itself in how it must exercise its right to establish wages, i.e. through negotiations and, if necessary, arbitration, and is bound until the City takes appropriate action to rescind the Agreement. *See Phipps v. Sch. Dist. of Kansas City*, 645 S.W.2d 91, 107 (Mo.App. W.D.1982) (on motion for rehearing) (stating that the contract itself does not bind the public body, but the formal action of the public body in adopting that contract does bind it and the contract will govern until superseded by another formal action).

While it is correct that the City is bound by this Agreement until it takes appropriate legislative action, the City did not give authority over wages for new classifications to an arbitrator by this Agreement. The wages set out in Exhibit "A" are enforceable against the City until it rescinds the Agreement, but only because the City established those wages and then adopted them through formal action. *Phipps*, 645 S.W.2d at 107. The City did not establish the Inventory Control Technician position's wages, so the City is not bound to any agreement about those wages.

The Union's attempt to characterize the City's actions as a repudiation of established procedures for resolving disagreements about wages opens Article VI, Section 1 of the Agreement to a risk of being declared void. If the City had instituted such procedures allowing an arbitrator to establish wages, it would have unlawfully delegated its legislative authority to establish wages. *Clouse*, 206 S.W.2d at 545.

Contrary to the Union's claim, the fact that the City could repeal the Agreement would not alter the fact that a portion of it was void because of that delegation. The Union's reliance on the rule that an amendment to a city charter that established public employees' wages is not a delegation of legislative authority is similarly misplaced. *See State ex rel. St. Louis Fire Fighters Ass'n Local No. 73 v. Stemmler*, 479 S.W.2d 456, 458, 461 (Mo. banc 1972) (holding that an amendment to a city charter establishing a minimum salary for its firemen did not result in an unlawful delegation of legislative authority because the people themselves are the "source of all governmental power" and they may amend their charters as long as they do not violate the Missouri Constitution). This Agreement between the Union and the City is not a governmental act by the people in Independence and cannot be compared to a charter amendment.

Allowing disputes over wages to go to the arbitrator results in a delegation of legislative authority, and as such it cannot be allowed. *Woodard v. Sch. Dist. of Kansas City, Mo.*, 869 S.W.2d 800, 802 (Mo. App. W.D.1994). The Union's interpretation of the Agreement would result in an arbitrator establishing a public employee's wages. The trial court correctly read the Agreement to not require arbitration of wages, thereby avoiding finding Article VI, Section 1 of the Agreement void.

## IV. CONCLUSION

The trial court correctly construed "job description" to not include wages. If "job description" included wages it would conflict with the prohibition in Article XXIII of the Agreement. Furthermore, allowing

rehearing. The *Sumpter* court said that although the ordinance did not create a collective bargaining agreement, it was valid and binding until changed by appropriate action

by the City. 645 S.W.2d at 366. The court found appropriate action by the City because the city council and Mayor approved the change to the agreement. *Id.*

**392**

the wage issue to be decided by an arbitrator would result in an unlawful delegation of legislative authority. Hence, the trial court's judgment in favor of the City is affirmed.

PATRICIA A. BRECKENRIDGE and PAUL M. SPINDEN, JJ., concur.