INDEPENDENCE–NATIONAL EDUCATION ASSOCIATION ("INEA"), Independence–Transportation Employees Association ("ITEA"), Independence–Educational Support Personnel ("IESP"), Wendy Biggerstaff, Gene Hope, Elizabeth Scott, Richard Jones, Randi Louise Mallett, Ron Cochran, and Jack Cobb, Appellants,

v.

INDEPENDENCE SCHOOL DISTRICT, Respondent.

No. WD 63697.

Missouri Court of Appeals, Western District.

Jan. 18, 2005.

Motion for Transfer to Supreme Court Denied March 1, 2005.

Application for Transfer Denied May 31, 2005.

Sally E. Barker, St. Louis, MO, for appellants.

Duane A. Martin, Kansas City, MO, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Judge.

Appellants, who are various employees of Respondent Independence School District ("the District") and unions representing employees within the District, appeal from the trial court's decision to sustain a motion for summary judgment filed by the District.

The District is a public school district located in Jackson County, Missouri. The District is governed by an elected, seven-person Board of Education ("the Board"). The District employs a significant number of people, including teachers, bus drivers, transportation workers, custodians, maintenance personnel, and paraprofessionals.

Appellants are comprised of four separate categories of those employees and their respective unions: (1) transportation employees, who are member of the Independence Transportation Employees Association ("ITEA"); (2) custodial and maintenance employees, who are members of the Independence Educational Support Personnel ("IESP"); (3) teachers, who are members of the Independence National Education Association ("INEA"); and (4) paraprofessionals, who are also members of INEA.

On April 23, 2002, after having conducted two open meetings with employees to discuss such a policy, the Board adopted a

"collaborative team process" for negotiating with employee groups in which multiple employee groups would be represented on a single "collaborative team" that would address employment issues. The collaborative team was to be comprised of six teacher representatives, one representative from each of six other employee groups (bus drivers, custodians, paraprofessionals, secretaries, nurses, and nutrition service employees), six District administrators, and two members of the board of education. Those members were to be provided with training in team building and cooperative decision-making. The collaborative team was to operate under the direction of an outside facilitator. After the collaborative team reached a consensus on an issue under discussion, such as work environment, benefits or compensation, a recommendation would be provided to the Superintendent. The Superintendent would then present the team's recommendation to the Board along with his own recommendation on whether to adopt, modify, or reject the team's recommendation, and the Board would subsequently adopt, modify, or reject the team's recommendation.

Previously, District representatives had discussed employment issues one-on-one with the exclusive bargaining representative for the transportation employees (ITEA) and the exclusive bargaining representative for the custodial and maintenance employees (IESP),[1] and the proposals resulting from those one-on-one discussions had been forwarded to the Board. District representatives had also held separate discussions with the "recognized group" for the majority of the teachers (INEA) pursuant to a "Discussion Procedure for Salary, Benefits and Policy Proposals" that had been adopted by the Board in the late 1970s. The Board rescinded that Discussion Procedure when it adopted the collaborative team process.

Subsequent to the Board's adoption of the collaborative team process, Appellants filed a petition for declaratory judgment and injunctive relief in the Circuit Court of Jackson County. In general, Appellants alleged that the District failed to comply with Missouri's Public Sector Labor Law, § 105.500 et seq., by adopting the collaborative team process and refusing to meet and confer separately with the ITEA, IESP, and INEA as the exclusive bargaining representatives for the transportation employees, custodial and maintenance employees, and paraprofessionals. Appellants also claimed that the District had improperly failed to meet and confer with these groups about the collaborative team process prior to its adoption by the Board. Appellants also asserted that the foregoing actions violated the terms of the Memoranda of Understanding that the District had with the ITEA and IESP. Appellants further contended that the District violated the Discussion Procedure that it had agreed upon with the teachers and District policy when it adopted the collaborative team process.

On October 29, 2003, the District filed is Motion to Dismiss or in the Alternative Motion for Summary Judgment. On December 2, 2003, Appellants filed a Cross-Motion for Summary Judgment. On December 10, 2003, the trial court sustained the District's motion for summary judgment and denied Appellants' motion. Appellants bring four points on appeal from that judgment.

1. The INEA was not certified as the exclusive bargaining representative for the paraprofessionals until April 5, 2002, eighteen days prior to the District's adoption of the collaborative team process.

We first address Appellants' final two points. In their third point, Appellants ask this Court to reverse the Missouri Supreme Court's decision in *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539 (1947), holding that Article I, Section 29 of the Missouri Constitution, which grants employees "the right to organize and to bargain collectively through representatives of their own choosing," does not apply to public employees. In their fourth point, Appellants ask this Court to reverse the decision of the Missouri Supreme Court in *Sumpter v. City of Moberly*, 645 S.W.2d 359 (Mo. banc 1982), holding that a memorandum of understanding that was approved by a legislative body does not constitute a binding collective bargaining agreement. Appellants contend that these cases and their progeny were wrongly decided.

A claim that the Missouri Supreme Court has incorrectly decided a previous case or cases is not cognizable in the Missouri Court of Appeals. *State v. Patterson*, 18 S.W.3d 474, 481 (Mo.App. S.D. 2000). "This court is constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court." *Kinder v. Missouri Dep't of Corr.*, 43 S.W.3d 369, 374 (Mo.App. W.D.2001) (citing *Mo. Const. art. V, § 2*). Points denied.

We now turn to Appellants' first two points challenging the propriety of the trial court's entry of summary judgment in favor of the District. The entry of summary judgment is proper "if 'the motion, the response, [and] the reply ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *International Bhd. of Elec. Workers, Local Union No. 53 v. City Power & Light Dep't*, 129 S.W.3d 384, 386 (Mo.App. W.D.2003) (quoting *Rule 74.04(c)(6)* ). Our review of

the trial court's grant of summary judgment is essentially *de novo*. *Id.* We review the record in the light most favorable to the party against whom judgment was entered, giving that party the benefit of all reasonable inferences that may be drawn from the record. *Id.* "Only when the evidence, viewed in that light, shows that the movant is entitled to judgment as a matter of law, may we affirm. If there remains a genuine dispute of material fact, summary judgment is inappropriate, and we must reverse." *Rodgers v. Threlkeld*, 80 S.W.3d 532, 534 (Mo.App. W.D.2002).

In their first point, Appellants contend that the trial court erred in granting the District's motion for summary judgment because the collaborative team approach improperly imposed a joint bargaining procedure upon the various exclusive bargaining representatives and that the District has failed to meet and confer with ITEA, IESP, and INEA separately, which they claim is required by § 105.520. Appellants further claim that the District improperly failed to meet and confer separately with representatives from these unions prior to adopting its collaborative team approach. Appellants also argue that the District improperly refused to present proposals that had previously been agreed upon in accordance with the old negotiation procedure to the Board of Education.

Under Missouri's Public Sector Labor Law, "Employees, except police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard, all teachers of all Missouri schools, colleges and universities, of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing." *§ 105.510.* Section 105.520 provides:

Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative or representatives shall meet, confer and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection.

■ The foregoing statutory provisions give public employees (with certain exceptions) a " 'vehicle for petitioning their employer through their designated representative.' " *Sumpter*, 645 S.W.2d at 362 (quoting *Curators of the Univ. of Mo. v. Public Serv. Employees Local No. 45*, 520 S.W.2d 54, 57 (Mo. banc 1975)). " 'When this representative submits proposals and grievances relative to salaries and other conditions of employment, the public body or its designated representative must acknowledge such proposals and grievances and must discuss them with the bargaining representative.' "[2] *Id.* (quoting *Curators*

*of the Univ. of Mo.*, 520 S.W.2d at 57); *See also Kinder v. Holden*, 92 S.W.3d 793, 797 (Mo.App. W.D.2002).

■ Thus, "[t]he Public Sector Labor Law requires the public body, or its representative, to meet, confer and discuss proposals about salary and conditions of public employment with the exclusive bargaining representative of its employees." *International Bhd. of Elec. Workers, Local Union No. 53*, 129 S.W.3d at 390. "Upon the completion of such discussions, the results must be reduced to writing and presented to the appropriate body for adoption, modification, or rejection." *Kinder*, 92 S.W.3d at 797.

ITEA, IESP, and INEA are the exclusive bargaining representatives for their respective employee group, certified as such by the state board of mediation as provided in § 105.525.[3] Accordingly, under the Public Sector Labor Law, the District is required to meet, confer, and discuss with those representatives regarding any proposals or grievances they have related to salary or other conditions of employment.

In its motion for summary judgment, the District asserted that, under its collaborative team approach, members of the collaborative team could submit proposals of their own to the team and that propos-

**2.** In *Sumpter v. City of Moberly*, 645 S.W.2d 359, 362 (Mo. banc 1982), the Missouri Supreme Court set out the procedure required by the Public Sector Labor Law as follows:

Generally, the public body will designate a representative to meet with the representative of the employees. In this event, the public body's representative acts essentially as a hearer and a receptor of the employees' petitions and remonstrances. His duty is to discuss them with the bargaining representative, and to fully apprise himself of the nature and extent of the proposals and grievances presented. The representative of the public body must then transmit to it,

in written form, the proposals and grievances and the substance of the discussions. The public body must then give them its consideration "in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection."

*Id.* (quoting *Curators of the Univ. of Mo.*, 520 S.W.2d at 57–58).

**3.** " 'Exclusive bargaining representative' means an organization which has been designated or selected by [a] majority of employees in an appropriate unit as the representative of such employees in such unit for purposes of collective bargaining." § 105.500(2).

als specific to a specific employee unit could be discussed in a sub-team comprising only the exclusive bargaining representative and the District's representatives. In their response to the District's motion for summary judgment, Appellants denied those factual assertions with specific reference to discovery, exhibits, or affidavits supporting their denial. Appellants contended that team members were not allowed to present proposals of their own to the team and that they did not have the ability to break into sub-teams to discuss issues specific to their employee group with District representatives. Appellants also asserted that they were not allowed to present proposals to the District outside of the collaborative team process.

█ Thus, Appellants and the District dispute whether representatives on the collaborative team were allowed to present proposals to the team or the District. This factual dispute between the parties is material to the claims before the trial court. If the collaborative team approach does not allow the various exclusive bargaining representatives to present proposals of their own to the team or directly to the District, that process clearly violates the provisions of the Public Sector Labor Law requiring the District to entertain proposals and grievances offered by employee representatives and to discuss those proposals with the representative.

As there clearly remains a dispute between the parties as to this material fact, the trial court could not properly have entered summary judgment on the claims asserted by the non-teacher employees and their respective unions in counts I, II,

and III of their petition. Accordingly, we must reverse the trial court's judgment as to those counts and remand the cause for further proceedings on those claims.[4]

In their remaining point on appeal, Appellants assert that the trial court erred in granting summary judgment in favor of the District regarding the claims made by the teachers and their union, the INEA, in count IV of Appellants' petition. Appellants contend that the District violated the Discussion Procedure that it had agreed upon for negotiating with the teachers in the district. Appellants argue that discussion procedures like the one at issue have been held to be binding on school districts under existing case law. Appellants further claim that the District failed to bargain with the INEA over the collaborative team approach prior to its adoption in violation of the Discussion Procedure and failed to present proposals that had previously been agreed upon pursuant to the Discussion Procedure to the Board for approval.

In their petition, Appellants alleged that the District, the teachers, and the INEA in its role as the Recognized group for the District's teachers had a longstanding agreement, reached during negotiations between the teachers and the District in the late 1970s, to meet, confer, and discuss proposals concerning teachers. Appellants contended that the Board adopted the agreed upon Discussion Procedure and included it within the "Policies of the Board of Education," specifically designated as § IV–K–2 thereof. Appellants noted that this procedure was followed until April 23,

---

4. In light of this decision, we need not address whether the District's collaborative team process complies with the letter and spirit of the Public Sector Labor Law. However, even if the evidence adduced on remand establishes that the exclusive bargaining representatives are indeed allowed to present proposals to the team and to break into sub-teams to discuss various issues, we nevertheless harbor serious reservations as to whether this would be sufficient to comply with the District's obligation under the law to negotiate with the exclusive bargaining representative of each appropriate employee unit.

2002, when the Board voted to rescind it and replace it with the collaborative team process.

On appeal, we must consider whether the trial court could have properly granted summary judgment on any of the grounds asserted in the District's motion. In one of its arguments for summary judgment, the District claimed that Appellants failed to sufficiently plead that a binding agreement existed between the District and the teachers regarding the Discussion Procedure because Appellants "failed to plead the statutory and traditional prerequisites to a valid binding contract" and that any agreement "therefore violates the statute of frauds." The District asserted that Appellants' petition failed to establish that any agreement between the District and the teachers complied with the provisions of § 432.070, which sets forth the statutory prerequisites for contracts with cities, towns, municipal corporations, and school districts.

The District's claims of illegality and failure to comply with the statute of frauds, however, are affirmative defenses to Appellants' claims rather than pleading requirements that Appellants were obliged to satisfy. *See Crawford v. Detring*, 965 S.W.2d 188, 191 (Mo.App. E.D.1998); *Boone Nat'l Sav. & Loan Ass'n v. Crouch*, 47 S.W.3d 371, 375 (Mo. banc 2001); *Rule 55.08*. While summary judgment may be properly entered where a defendant establishes its right to judgment by showing "that there is no genuine dispute as to the existence of each of the facts necessary to support the [defendant]'s properly-pleaded affirmative defense," *International Bhd. of Elec. Workers, Local Union No. 53*, 129 S.W.3d at 387, the District has yet to properly plead, let alone prove, any such affirmative defenses.

Rule 55.08 and Rule 55.27 require a party seeking to raise an affirmative defense to plead that defense in the appropriate responsive pleading—in this instance, the answer to the petition. Rule 55.08 further requires that "[a] pleading that sets forth an affirmative defense or avoidance shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance." *Rule 55.08*.

In the case at bar, the District has not filed an answer to Appellants' petition. Accordingly, the District has neither denied Appellants' averment that the Discussion Procedure resulted from an agreement between the District and the teachers nor has it properly pleaded any affirmative defenses to Appellants' claims.

Moreover, the party asserting an affirmative defense bears the burden of proving that they are entitled to that defense. *Smith v. Kriska*, 113 S.W.3d 293, 296 (Mo.App. E.D.2003). The District has failed to set forth uncontroverted facts establishing that the agreement between the District and the teachers reached in the 1970s failed to comply with § 432.070 or otherwise violated the statute of frauds. Accordingly, summary judgment could not have been properly entered on Appellants' claims of illegality and failure to comply with the statute of frauds.

The District also asserted in its motion that summary judgment was appropriate because the terms of the Discussion Agreement do not require it to observe that procedure in adopting a new discussion procedure. The District argued that, because the Discussion Agreement provides that "the recognized group may submit proposals concerning salaries and policy modifications," the Discussion Agreement only required discussion of proposals proposed by the teachers.

The provision referenced by the District states, in full: "The recognized group may

submit proposals concerning salaries and policy modifications as defined in IV–K–2–a–7 to the spokesperson of the Board discussion team not later than two weeks prior to the first scheduled meeting of the meet and confer teams. After that date, further proposals shall not be acceptable." That provision merely sets a deadline for the submission of proposals for discussion by the INEA and does not preclude the discussion of proposals advanced by the District.

The Discussion Procedure provides for "meet and confer" sessions between the District and the recognized group representing the teachers. It provides that "[a]ny consensus reached by discussion teams regarding proposals shall be recorded as a memorandum of understanding, initialed by both teams, a copy provided each initiating team, and subsequently presented to the Board of Education for consideration." The Discussion Procedure sets out that a "proposal" is "a recommendation relative to changes, additions or deletions to any of the following which are written: policy, rules, orders, administrative regulations and procedures." The preface to the "Procedures for Communication" contained in Section IV of the Policies of the Board of Education states:

> The Board recognizes the importance of responsible participation in decisions pertaining to the educational process, planning, development and growth. To this end, we shall maintain procedures of communication with our certificated employees by exchanging relevant data and points of view, and making proposals in the interest of good faith communication as contained in this policy.

From the foregoing language, it appears that the Discussion Procedure was meant to provide for the discussion of proposals made by the District related to teachers as well as proposals made by the recognized group. It is, at the very least, ambiguous on this issue. Summary judgment could not have been properly entered on this ground.

The final assertion related to the teachers' claims offered by the District in its motion for summary judgment is a broad claim that, even if an agreement existed between the District and the teachers, as a matter of law the District could change its policy at any time for any reason without discussing the matter with the teachers. That assertion is clearly contrary to the existing case law.

In *Finley v. Lindbergh School District*, 522 S.W.2d 299, 300 (Mo.App. E.D.1975), the district and board of education appealed from a decision upholding a similar "negotiations agreement" between the district and a teachers' association. The teachers' association and the district entered into the "negotiations agreement," and, subsequently, the board of education advised the association that the district was considering canceling the agreement and ultimately did so by resolution. *Id.* The teachers' association then filed an action for declaratory relief seeking a declaration that the agreement was valid and binding, that the cancellation of the contract by the board of education was illegal, and that the district be required to honor the agreement. *Id.* The *Finley* court held that the trial court did not err in ordering the district to specifically perform the agreement. *Id.* at 303. A similar agreement was held to be binding upon a school district in *Peters v. Board of Education of Reorganized School District No. 5 of St. Charles County*, 506 S.W.2d 429, 432–33 (Mo.1974).

Despite Appellants' reliance upon these cases before the trial court and on appeal, the District has failed to even mention *Finley* or *Peters* in its brief on appeal, let alone attempt to differentiate those cases

from the case at bar. We perceive of no readily apparent distinction between the case *sub judice* and *Finley* and *Peters,* provided that a valid contractual agreement is found to have existed between the District and the teachers. Accordingly, the trial court could not have properly entered summary judgment on this basis.

Having reviewed all of the District's grounds for summary judgment related to the claims of the teachers and the INEA asserted in Count IV of Appellants' petition, we find that summary judgment could not have properly been entered on any of the grounds asserted.

For the foregoing reasons, we reverse the trial court's judgment granting the District's motion for summary judgment as to Counts I, II, III, and IV[5] of Appellants' petition and remand the cause for further proceedings.[6]

All concur.

---

5. Count V of Appellants' petition rests upon their assertion that *Clouse* was wrongly decided and should be overturned. As noted *supra,* neither the trial court nor this Court has the authority to overrule a decision issued by the Supreme Court of Missouri. The District was clearly entitled to judgment as a matter of law as to Count V of Appellants' petition under the law as established in *Clouse,* and the trial court properly entered summary judgment as to that count.

6. Having reached this conclusion, we need not address Appellants' remaining arguments as to why summary judgment should be reversed. We likewise need not, and do not, review Appellants' claims that the trial court should have granted their motion for summary judgment as " '[a]bsent special circumstances, we do not review the denial of a motion for summary judgment.' " *East Attucks Cmty. Hous., Inc. v. Old Republic Sur. Co.,* 114 S.W.3d 311, 327 (Mo.App. W.D.2003) (quoting *In re Estate of Corbin,* 66 S.W.3d 84, 94 (Mo.App. W.D.2001)).